**GLOUCESTER HOLDING
CORPORATION,**
Plaintiff,

v.

**U.S. TAPE AND STICKY PRODUCTS,
LLC, Defendant.**

**C.A. No. 19227.**

Court of Chancery of Delaware,
New Castle County.

Submitted: Dec. 13, 2002.
Decided: March 18, 2003.

Jay W. Eisenhofer, Megan D. McIntyre, Sidney S. Liebesman, Grant & Eisenhofer, P.A., Wilmington, Delaware; David M. Schlecker, Diana R. Shafter, Anderson Kill & Olick, P.C., New York, New York; for Plaintiff.

Duane D. Werb, Werb & Sullivan, Wilmington, Delaware; David A. Brown, John Pina, III, Sherin and Lodgen LLP, Boston, Massachusetts; for Defendant.

## OPINION AND ORDER

LAMB, Vice Chancellor.

### I.

This action arises out of an agreement by one company to purchase substantially all of the assets of another. The buyer alleges that during the negotiations leading up to the sale, the seller failed to make several material disclosures regarding certain of the assets to be purchased. As a result of these non-disclosures, the buyer alleges that it was fraudulently induced to enter into the agreement. The buyer also alleges that the seller engaged in unfair and deceptive business practices as proscribed under Massachusetts law. Finally, the buyer argues that the seller breached various contractual provisions in the asset purchase agreement.

The seller has moved to dismiss the buyer's claims in this action for a variety of reasons, all of which must fail. First, the seller argues that claims for fraud in the inducement and unfair and deceptive business practices are precluded by virtue of an integration clause and a choice of law provision in the asset purchase agreement. Under the appropriate choice of law rules, however, Massachusetts law applies. And, under Massachusetts law, the integration clause is insufficient to preclude such claims. Second, the seller argues that the contract claims must be dismissed because they depend on the buyer's ability to prove it was justified in relying on the completeness of certain material that was not included in the final agreement. This argument is unpersuasive both because justifiable reliance is not a required element to state a contract-based claim, and because the buyer makes claims based on information contained within the contract itself. Finally, the court concludes that portions of the asset purchase agreement that purport to limit available claims are not sufficiently broad enough to preclude a claim for a breach of the implied contractual duty of good faith and fair dealing.

### II.

#### A. Background

In April of 2000, U.S. Tape and Sticky Products, LLC ("US Tape") entered into negotiations with Gloucester Holding Corp. ("GHC")[1] to purchase all of GHC's assets.[2] Throughout the negotiations with U.S. Tape, GHC insisted on a "fast track" transaction with a minimal due diligence period. In accordance with these "fast track" negotiations, the parties exchanged drafts of a letter of intent and negotiated a purchase agreement within a week. On April 26, 2000, U.S. Tape and GHC executed an Asset Purchase Agreement.

---

[1]. At the time the transaction at issue was negotiated and consummated, GHC was known as LePage's.

[2]. For purposes of this motion only, the facts are taken from U.S. Tape's well-pleaded counterclaim.

The closing was set to occur on May 1, 2000. Before the scheduled closing date, U.S. Tape engaged in intense due diligence activity, including discussions with GHC regarding environmental issues. The parties decided to postpone the closing to May 9, 2000. In the interim, the parties amended the Asset Purchase Agreement to delete the sale of GHC's premises (the "Premises") to U.S. Tape and to grant Gloucester Land Investment Company, LLC, an affiliate of U.S. Tape, an eighteen-month lease of the Premises with an option to purchase.

Pursuant to the Asset Purchase Agreement, as amended, U.S. Tape paid $3,400,000 to GHC in exchange for its assets, including fixed assets, accounts receivable, prepaid expenses, and the assignment of certain contract rights, including the right to use the name "LePage's." US Tape acquired certain coating equipment as part of the assets purchased from GHC. In addition, U.S. Tape assumed the obligation to pay a specific list of accounts payable totaling approximately $1,161,295.

### B. *GHC's Alleged Failure To Make Material Disclosures To U.S. Tape*

During the due diligence period, including up to the May 9, 2000 closing date, GHC allegedly failed to disclose: (a) dozens of environmental and odor complaints by nearby residents to the Gloucester Board of Health ("Board of Health"), the Massachusetts Department of Environmental Protection ("DEP") and the United States Environmental Protection Agency ("EPA") concerning alleged air emissions from GHC's manufacturing plant; (b) uncollectable amounts in its accounts receivable; (c) accounts payable in addition to those for which U.S. Tape had assumed responsibility; and (d) the details regarding prepaid expenses that U.S. Tape purchased.

### 1. *Non–Disclosure Of Complaints Regarding The Plant's Odor*

In performing due diligence associated with the Asset Purchase Agreement, U.S. Tape requested information regarding any environmental problems, complaints or issues associated with the Premises. GHC provided some documents to U.S. Tape indicating the DEP had issued in April 2000 an air emissions permit for a plant (the "Plant") located on the Premises. GHC also disclosed one document indicating there were odor complaints in 1996. The document indicated that the DEP had investigated and found no wrongdoing. Otherwise, GHC failed to disclose any complaints or governmental action concerning odor emissions from the Plant.

In late 2000, DEP issued a Notice of Non–Compliance to U.S. Tape based on odor emissions from coating equipment used in the manufacturing of tape. As a consequence of DEP's enforcement action, U.S. Tape was compelled to reduce its coating operations on the Premises by 50%.

Thereafter, U.S. Tape obtained records from the Gloucester Department of Public Health and the DEP that show dozens of odor complaints and substantial DEP and Board of Health involvement in operations at the Plant since March of 1997, when GHC took direct control of plant operations. GHC was aware of but failed to disclose the existence of these complaints and the involvement of regulatory agencies related to environmental issues. Specifically, GHC was obligated to retain certain liabilities under the Asset Purchase Agreement. GHC's retained liabilities include:

> all acts or omissions of [GHC] or its agents that may give rise to liabilities or obligations under any applicable federal, state or local environmental law, ordinance, regulation, code, rule of common

law, orders, consent decree or consent judgment and all obligations and liabilities relating to, or the condition of, the Real Estate, all relating to the period prior to the Closing Date.[3]

On May 7, 2001, U.S. Tape presented GHC with a claim under the Asset Purchase Agreement as a result of losses experienced in connection with the coating and related equipment. GHC has failed to respond.

### 2. GHC's Alleged Failure To Disclose Customer Claims

GHC failed to accurately disclose reductions to accounts receivable due to customer claims for defective products, overcharges, refunds due and billing errors in its accounts receivable ledgers as of March 31, 2000. US Tape relied on GHC's accounts receivable ledger as being materially true and accurate.

When U.S. Tape learned of the undisclosed bad debts, it made several demands for payment of claims or reductions to accounts receivable after May 9, 2000 in the total amount of $302,301 for uncollectable accounts and other amounts applied in reduction of GHC's accounts receivable as of May 9, 2000. GHC has failed to respond to these demands or otherwise to reimburse U.S. Tape for those incurred losses. All of these claims relate to GHC's ownership and operation of the business in the years 1998 through 2000 and to uncollectable amounts about which GHC failed to inform U.S. Tape before the closing.

### 3. GHC Allegedly Failed To Disclose All Material Accounts Payable

US Tape agreed in the Asset Purchase Agreement to assume liability for a specific schedule of accounts payable. In addi-

tion, pursuant to Section 2 of the Asset Purchase Agreement, U.S. Tape agreed to pay other liabilities that GHC "incurred in the ordinary course and which individually and in the aggregate are not material." [4] GHC failed to identify on its schedule accounts payable in the approximate amount of $86,195. These accounts payable stemmed from GHC's business operations before the closing.

US Tape made demand on GHC for payment of these amounts in August, September and October 2000. On December 29, 2000, U.S. Tape repeated its earlier demands for payment of these undisclosed account payable amounts. GHC to date has not made these payments.

Additionally, U.S. Tape learned that GHC failed to disclose as a liability on the March 31, 2000 balance sheet a claim of $4,543 for a Crayola License Agreement for the first quarter of 2000. Similarly, GHC also failed to identify a claim for payment under a Warner Brothers License Agreement in the amount of $4,000. These amounts relate to GHC's business before the closing with U.S. Tape.

### 4. GHC's Alleged Failure To Disclose Prepaid Expenses

US Tape paid for and acquired GHC's prepaid expenses in the Asset Purchase Agreement. US Tape requested full disclosure of these prepaid expenses during the due diligence period. In response, GHC disclosed a March 31, 2000 statement showing prepaid expenses of $212,817. At the closing on May 9, 2000, a printout of GHC's records showed prepaid expenses of $229,000. There was no schedule of individual prepaid expenses attached to the March 31, 2000 or May 9, 2000 statements. Despite several requests thereaf-

---

**3.** Bacon Aff. Ex. A ("Asset Purchase Agreement") at Schedule 2.4(b).

**4.** *Id.* at § 2.4.

ter, GHC failed to provide a complete list of specific prepaid expenses. This failure prevented U.S. Tape from receiving the benefit of the prepaid expenses because it was unable to determine what vendors were prepaid.

### C. Relevant Contract Provisions Of The Asset Purchase Agreement

Before U.S. Tape and GHC actually began negotiating the sale of GHC's assets, the parties entered into a Confidentiality Agreement.[5] The relevant provision of the Confidentiality Agreement provides:

> The parties understand and acknowledge that neither [GHC] nor any of its directors, officers, stockholders, partners, employees, owners, affiliates, Representatives, advisors or agents is making any representation or warranty, express or implied, as to the accuracy or completeness of the applicable Evaluation Material, and neither [GHC] nor any of its respective directors, officers . . . will have any liability to [US Tape] or any other Person resulting from use of the Evaluation Material. . . . [6]

After U.S. Tape conducted its due diligence, GHC and U.S. Tape agreed that GHC would sell its assets to U.S. Tape "where is as is." Section 5.8 of the Asset

Purchase Agreement states that U.S. Tape, as buyer "acknowledges that the Assets are sold on a 'where is as is' basis with no express or implied warranties as to use, fitness, condition or otherwise." In addition, Section 4.12 of the Asset Purchase Agreement states:

> The Financial Statements are true and correct, and they accurately present the assets, liabilities, sales, earnings, results of operations of the Business and the financial condition of [GHC], as of the respective dates thereof and have been prepared in accordance with generally accepted U.S. accounting principles applied in a consistent basis ("GAAP").

Section 4.8 of the Asset Purchase Agreement warrants:

> Absence of Undisclosed Liabilities. [GHC] has not incurred any liabilities or obligation in connection with the Business (whether accrued, absolute, contingent or otherwise), which continue to be outstanding, outside of the normal and ordinary course of business and which are required to be reflected on the Financial Statements in accordance with GAAP.

Moreover, Section 9.2 states:

> All statements contained in any schedule or in any certificate or instrument of

---

**5.** *See* McIntyre Transmittal Aff., Ex. A ("Confidentiality Agreement").

**6.** *Id.* at ¶ 7. "Evaluation Material" is defined in ¶ 4 of the Confidentiality Agreement. It includes "[a]ll information and documents, whether in written or oral form, which any Disclosing Party furnishes or otherwise discloses to the other party hereto or to any of its Representatives, whether furnished or otherwise disclosed before, on or after the date of this Agreement, together with all analyses, compilations, studies or other documents, records or data prepared by either party or any of their respective Representatives which contain or otherwise reflect or are generated from such information or documents. The term 'Evaluation Material' does not include

any information which (i) at the time of disclosure is generally available to or known by the public (other than through a disclosure directly or indirectly resulting from a violation hereunder), (ii) is known by the applicable party at the time of receiving such information, as evidenced by its business records and was received by such party on a nonconfidential basis, or (iii) was available to the applicable party on a non-confidential basis from a source (other than a Disclosing Party) that is not and was not bound by a confidentiality agreement with any Disclosing Party or otherwise prohibited from transmitting the information to the applicable party on a nonconfidential basis by a contractual, legal or fiduciary obligation."

conveyance delivered by or on behalf of the parties pursuant to this Agreement or in connection with the transactions contemplated hereby shall be deemed to be representations and warranties by the parties hereunder.

The parties also agreed that the Asset Purchase Agreement would contain a clause entitled "Seller's Indemnification" (the "Indemnification Clause"),[7] which provides:

> [GHC] hereby agrees to indemnify, defend and hold [US Tape] and its officers, directors, members, representatives and agents harmless from and against any damage, loss, cost, or expense (including reasonable attorney's fees and settlement costs) (each a "Claim") occasioned, caused by, resulting from, or arising out of:
>
> (a) any failure by [GHC] to perform, abide by or fulfill any of the material agreements, covenants or obligations set forth in or entered into, in connection with this Agreement or the Transaction Documents to be so performed or fulfilled by [US Tape];
>
> (b) any material inaccuracy in or breach of any of the representations or warranties in this Agreement or the Transaction Documents, or any Exhibit, certificate or Schedule or other writing furnished by [GHC] pursuant hereto or thereto; and
>
> (c) the Retained Liabilities.

The parties also bargained for a clause in the Asset Purchase Agreement entitled "Sole Remedy," which states, in relevant part:

> [GHC]'s indemnification contained in Section 10.1 hereof shall be [US Tape]'s sole source of remedy against [GHC] for

all Claims or other causes of action or the like arising under this Agreement or under any of the Transaction Documents or in connection with the transactions completed herein or therein, whether arising at law or in equity.[8]

Section 12.7 of the Asset Purchase Agreement (the "Integration Clause") also provides:

> This Agreement ... constitutes the entire agreement among the parties pertaining to the subject matter hereof and supersedes all prior agreements, understandings, negotiations and discussions, whether oral or written, of the parties other than the Confidentiality Agreement ..., which Confidentiality Agreement shall survive any termination of this Agreement other than through the consummation of the purchase and sale transaction contemplated herein.

Finally, the parties agreed that the Asset Purchase Agreement would contain a clause entitled "Choice of Law" which states that the Asset Purchase Agreement "shall be construed, interpreted and the rights of the parties determined in accordance with the laws of the State of Delaware (without regard to any conflict of law provisions thereof)." [9]

### III.

On November 2, 2001, GHC commenced an action in this court seeking a declaratory judgment of GHC's rights, injunctive relief, and damages for breach of contract. On May 17, 2002, U.S. Tape served GHC with its answer. US Tape also alleged six counterclaims against GHC. This opinion deals solely with GHC's motion to dismiss five of U.S. Tape's counterclaims. Count I

7. Asset Purchase Agreement at § 10.1.

8. *Id.* at § 10.3.

9. *Id.* at § 12.4, as amended by Amendment 1.8 to Article XII of the Asset Purchase Agreement, Bacon Aff. Ex. B.

of the counterclaim alleges fraud and misrepresentation by GHC for intentionally failing to disclose material information in connection with U.S. Tape's performance of due diligence. Count II alleges that GHC breached its indemnity obligations to U.S. Tape based upon GHC's alleged failure to make accurate disclosures. Count III alleges that GHC's failure to indemnify U.S. Tape constitutes a breach of contract. Count IV alleges that GHC's intentional nondisclosures amount to a breach of the implied contractual obligation of good faith and fair dealing. Count V alleges that such omissions constitute deceptive and unfair acts under Massachusetts General Laws ch. 93A §§ 2 and 11 ("Chapter 93A"). Finally, Count VI seeks a judicial declaration that GHC is responsible for all unpaid invoices, licensing agreements, and claims from GHC's business operations before May 9, 2000. GHC has moved to dismiss Counts I through V of U.S. Tape's counterclaim.[10]

## IV.

▓ When considering a motion to dismiss a counterclaim under Court of Chancery Rule 12(b)(6) for failure to state a claim upon which relief can be granted, the court is to assume the truthfulness of all well-pleaded allegations of fact in the counterclaim.[11] Although "all facts of the pleadings and reasonable inferences to be drawn therefrom are accepted as true ...

neither inferences nor conclusions of fact unsupported by allegations of specific facts ... are accepted as true."[12] That is, "[a] trial court need not blindly accept as true all allegations, nor must it draw all inferences from them in Plaintiff's favor unless they are reasonable inferences."[13] Additionally, the court may consider, for certain limited purposes, the content of documents that are integral to or are incorporated by reference into the counterclaim.[14] For example, the court will take judicial notice of the Asset Purchase Agreement in assessing the merits of the claims against GHC.

## V.

A. *US Tape States A Claim For Fraud In The Inducement*

1. *Massachusetts Law Applies To U.S. Tape's Fraud In The Inducement Claim*

▓ To begin with, the Asset Purchase Agreement includes a valid choice of law provision, which states that it "shall be construed, interpreted and the rights of the parties determined in accordance with the laws of the State of Delaware (without regard to any conflict of law provisions thereof)."[15] US Tape does not dispute that this choice of law clause requires all contract claims to be litigated based on Delaware law. What U.S. Tape does dispute, however, is the assertion that this

---

10. GHC's initial motion sought only to dismiss Counts I, IV and V of U.S. Tape's counterclaims. After oral arguments on this motion, GHC amended its motion to dismiss to include Counts II and III of the counterclaim as well. For the reasons discussed herein, the motion to dismiss Count II is denied. The motion to dismiss Count III is granted because the claim asserted therein is subsumed within Count II.

11. *Grobow v. Perot*, 539 A.2d 180, 187 & n. 6 (Del.1988).

12. *Id.*

13. *Id.*

14. *See In re Santa Fe Pac. Corp. S'holder Litig.*, 669 A.2d 59, 69–70 (Del.1995).

15. Asset Purchase Agreement § 12.4, as amended by Amendment 1.8 to Article XII of the Asset Purchase Agreement, Bacon Aff. Ex. B.

choice of law provision is sufficiently broad enough to cover tort claims that are related to the formation of the Asset Purchase Agreement.

Delaware courts look to the Restatement (Second) of Conflict of Laws for guidance in choice of law disputes.[16] Section 145(1) of the Restatement provides that "[t]he rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties...." A claim for fraud in the inducement would seem to fit this definition, in which case U.S. Tape's claim would be interpreted under the laws of Massachusetts.[17]

GHC argues that the choice of law clause in the Asset Purchase Agreement is broad enough to cover this tort claim. There are certain circumstances where courts have held that a broad choice of law clause in a contract could encompass tort claims that relate to contract formation.[18] The choice of law clause here, however, does not claim to cover litigation that *arises out of or relates to* the Asset Pur-

chase Agreement. Rather, the clause merely provides that Delaware law applies to the "rights of the parties" derived from the contract. This clause is simply not sufficiently broad enough to cover tort claims such as fraud in the inducement.[19] Thus, under Delaware choice of law rules, U.S. Tape's fraudulent inducement claim should be governed by Massachusetts law.[20]

### 2. US Tape States A Claim For Fraud In The Inducement Under Massachusetts Law

■ "To establish fraud in the inducement, and thereby be relieved of the effect of the [Asset Purchase Agreement], [US Tape is] required to establish the elements of common law deceit, which include 'misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying.' "[21]

■ GHC argues that U.S. Tape's fraud claim is barred by the Integration Clause. Under Massachusetts law, however, such a contractual provision does not bar a party from bringing a claim for fraud in the

---

**16.** *See Travelers Indemnity Co.*, 594 A.2d at 40 (citing RESTATEMENT (SECOND) OF CONFLICT OF LAWS § 145(1) (1971)).

**17.** GHC does not dispute that if the Delaware choice of law clause is inapplicable to tort claims then Massachusetts law will cover such claims. Moreover, GHC's alleged misrepresentations and omissions were made in connection with the lease of real property and sale of assets located in Massachusetts.

**18.** *See, e.g., VGS, Inc. v. Castiel*, 2003 WL 723285, at *7 & n. 29 (Del.Ch. Feb. 28, 2003) (stating that New York law applied to fraud in the inducement claims because the choice of law clause at issue provided for New York law "for any litigation arising out of or relating to [this]. Agreement and transactions contemplated hereby"); *Turtur v. Rothschild Registry Int'l, Inc.*, 26 F.3d 304, 309 (2d Cir.

1994) (holding that a choice of law clause applying New York law was sufficiently broad to encompass tort and contract claims when the agreement covered any controversy "arising out of or relating to" that agreement).

**19.** *See, e.g., State National Bank v. Academia, Inc.*, 802 S.W.2d 282, 289 (Tex.Ct.App.1990) (holding that a Texas choice of law clause in contract was not broad enough to cover tort claims because the contract at issue only stated that its "validity, construction and enforcement" would be governed by Illinois law).

**20.** For the same reasons, the choice of law clause does not preclude U.S. Tape's claim for a violation of Chapter 93A.

**21.** *Commerce Bank & Trust v. Hayeck*, 46 Mass.App.Ct. 687, 709 N.E.2d 1122, 1127 (1999) (citation and quotation omitted).

inducement of a contract. The Massachusetts courts have held that "parties to contracts, whether experienced in business or not, should deal with each other honestly, and that a party not be permitted to engage in fraud to induce the contract." [22] Thus, an integration clause cannot preclude a claim for fraud in the inducement.[23]

The case of *Sheehy v. Lipton*,[24] is instructive. In that case, a purchaser of land that was subsequently discovered to contain hazardous waste brought an action against the seller and the seller's agent alleging, among other things, misrepresentation.[25] The purchaser based the misrepresentation claim on the fact that he had inquired whether the property had any potential problem with hazardous waste.[26] The seller's agent told the purchaser: "Don't worry about it." The trial court dismissed the misrepresentation claim on

summary judgment and the purchaser appealed.[27]

The seller argued that summary judgment was proper because the purchaser " 'recognize[d] that [s]eller makes no warranties whatsoever,' and that he 'has not been influenced to enter into this transaction nor has he relied upon any warranties or representations not set forth in this agreement ...' " as stated in an "as is" contract provision.[28] The seller also argued that "the plaintiff, an experienced businessman who had the benefit of legal counsel before he signed the purchase and sale agreement, could not have relied on any statement that might have been made about the land." [29] The Massachusetts Appeals Court rejected these arguments.[30] The court held:

> Massachusetts case law rejects the assertion of 'as is' and *like clauses* as an automatic defense to allegations of fraud

---

22. *McEvoy Travel Bureau, Inc. v. Norton Co.*, 408 Mass. 704, 563 N.E.2d 188, 194 (1990) (citing *Bates v. Southgate*, 308 Mass. 170, 31 N.E.2d 551, 558 (1941)).

23. *See VMark Software, Inc. v. EMC Corp.*, 37 Mass.App.Ct. 610, 642 N.E.2d 587, 595 n. 11 (1994) (defendant's "reliance on the ... integration clause[] of the agreement to bar [plaintiff's] recovery for misrepresentation is misplaced. The Massachusetts authority just cited, particularly *Bates,* establishes that a party may not escape liability for misrepresentation by resort to such provisions."); *see also Bates,* 31 N.E.2d at 558 ("In obedience to the demands of a larger public policy the law long ago abandoned the position that a contract must be held sacred regardless of the fraud of one of the parties in procuring it").

24. 24 Mass.App.Ct. 188, 507 N.E.2d 781 (1987).

25. *Id.* at 782.

26. *Id.*

27. *Id.*

28. *Id.* at 784.

29. *Id.* at 785.

30. The court did not reject the possibility that reliance may be deemed not justifiable at trial by virtue of the sophistication of the parties and their respective legal representation. It simply noted that, "Both defendants have argued forcefully that the plaintiff, an experienced businessman who had the benefit of legal counsel before he signed the purchase and sale agreement, could not have relied on any statement that might have been made about the land. This may ultimately be found to be so. Because, however, these are proceedings under Mass. R. Civ. P. 56, the plaintiff's proof and affidavits presented in opposition to summary judgment must be strictly construed against the defendants, the parties seeking summary judgment, and the plaintiff is given the benefit of all favorable inferences." *Id.* Thus, the sophistication and legal representation of U.S. Tape coupled with various contractual provisions (including the Integration Clause and the Confidentiality Agreement) may very well lead the court at trial to conclude that U.S. Tape's reliance on the alleged misrepresentations was not justifiable.

or deceit. The same public policy that in general sanctions the avoidance of a promise obtained by deceit strikes down all attempts to circumvent that policy by means of contractual devices. In the realm of fact it is entirely possible for a party knowingly to agree that no representations have been made to him, while at the same time believing and relying upon representations which in fact have been made and in fact are false but for which he would not have made the agreement." [31]

Accordingly, under Massachusetts law GHC's motion to dismiss Count I must be denied. [32]

### B. *US Tape States A Claim For A Violation Of Chapter 93A*

Under Massachusetts law, "[Chapter 93A] generally prohibits unfair or deceptive acts or practices in business." [33] "This act is one of several legislative attempts . . . to regulate activities with the view to providing proper disclosure of information. . . ." [34] Section 11 of Chapter 93A provides a business with a remedy for financial or property loss suffered as a result of an unfair or deceptive act or practice by another business. [35] Further, whether an act complained of falls within the scope of unlawful conduct under Chapter 93A depends on the circumstances of each case. [36]

GHC's duty to disclose the odor complaints to U.S. Tape is established by Section 2(c) of Chapter 93A, which empowers the Massachusetts Attorney General to make rules and regulations interpreting Section 2(a) of Chapter 93A. [37]

The Attorney General's regulation in [Code of Massachusetts Regulations, Title 940, § 3.16(2) ] states that *an act or practice violates chapter 93A if:* 'Any person or other legal entity subject to this act *fails to disclose to a buyer or prospective buyer any fact, the disclosure of which may have influenced the buyer or prospective buyer not to enter into the transaction.* [38]

■ The several odor complaints and subsequent DEP and Board of Health involvement in operations at the Plant before closing on the Asset Purchase Agreement are allegedly material facts that would have affected U.S. Tape's decision to enter into the transaction. [39] Thus, GHC's

---

31. *Id.* at 784 (emphasis added).

32. It is important to note that U.S. Tape must prove at trial an intentional misrepresentation. The integration clause does preclude any claim U.S. Tape may make for negligent misrepresentation. *See generally Sound Techniques, Inc. v. Hoffman*, 50 Mass.App.Ct. 425, 737 N.E.2d 920, 926–27 (2000).

33. *V.S.H. Realty, Inc. v. Texaco, Inc.*, 757 F.2d 411, 415–16 (1st Cir.1985) (citing Chapter 93A).

34. *Id.* (citation omitted).

35. *See Nader v. Citron*, 372 Mass. 96, 360 N.E.2d 870, 873 (1977).

36. *See Spence v. Boston Edison Co.*, 390 Mass. 604, 459 N.E.2d 80, 87–88 (1983).

37. *V.S.H. Realty, Inc.*, 757 F.2d at 415–16 (the remedy of businessman versus businessman under Section 11 of Chapter 93A may be invoked against an "unfair or deceptive act or practice declared unlawful by [Section 2] or by any rule or regulation issued under [Section 2(c) ]" by the Attorney General).

38. *Id.* (emphasis added).

39. GHC had a duty to disclose accurate information regarding odor complaints. GHC allegedly told U.S. Tape about a single odor complaint made in 1996, without mentioning dozens of odor complaints made thereafter or the regulatory and enforcement involvement by the DEP and the Board of Health. *See id.* at 416–17 ("even if we were to accept the [lower] court's premise that nondisclosure is a violation of chapter 93A only when there is a duty to disclose, we would find that [plain-

failure to disclose these facts, if they are ultimately determined to be material, gives rise to liability under Chapter 93A.

 The Integration Clause does not bar U.S. Tape's Chapter 93A claim under Massachusetts law. "Whether we refer to the clause in question as a merger clause, *an integration clause*, or an exculpatory clause, the settled rule of law is that a contracting party cannot rely upon such a clause as protection against claims based upon fraud or deceit." [40] This principle also applies to U.S. Tape's Chapter 93A claims.[41] Moreover, "[t]o be held unfair or deceptive under [Chapter] 93A, practices involving even worldly-wise business people do not have to attain the antiheroic proportions of immoral, unethical, oppressive, or unscrupulous conduct, but need only be within any recognized or established common law or statutory concept of unfairness." [42] Accordingly, the presence of the Integration Clause does not preclude U.S. Tape's claims under Chapter 93A.

 Finally, the Sole Remedy Clause in the Asset Purchase Agreement does not bar U.S. Tape's claim under Chapter 93A. In *Standard Register Co. v. Bolton–Emerson, Inc.*,[43] a case analogous to the present dispute, a buyer of a label machine brought an action against the seller for breach of contract and unfair trade practices based on misrepresentations. The court held "that because the tort-like elements of the chapter 93A claim predominate over the contract elements, the limitation of liability provisions in the coater contract are ineffective to bar [plaintiff] from recovering for a violation of [Section 11 of Chapter 93A] based on such deceitful activity." [44] The same holds true for the current dispute.

For all these reasons, GHC's motion to dismiss Count V of U.S. Tape's counterclaim will be denied.

## C. *US Tape's Contractual Claims Cannot Be Dismissed*

### 1. *Count II States A Valid Claim For Indemnification*

 GHC's sole argument in support of its motion to dismiss Counts II and III (among others) of U.S. Tape's counterclaim, is found in a four line footnote to a post-hearing brief. In it, GHC argues that these counts must fail because they improperly "hinge on U.S. Tape's ability to prove that it was justified in relying on the completeness of Evaluation Material provided by GHC and GHC's purported liability stemming therefrom." [45] This assertion is simply incorrect. Reliance is not an element of claim for indemnification.[46]

---

tiff] has met its burden of establishing a duty by alleging that [defendant] made partial or *incomplete statements regarding the oil leaks on the property*").

40. *Sound Techniques, Inc.*, 737 N.E.2d at 924 (citing *Bates*, 31 N.E.2d at 558–59).

41. *See McEvoy Travel Bureau, Inc.*, 563 N.E.2d at 194 (common law fraud can be the basis for a claim of unfair or deceptive business practices under Section 11 of Chapter 93A); *Sheehy*, 507 N.E.2d at 781.

42. *VMark Software, Inc.*, 642 N.E.2d at 595 (citing *Levings v. Forbes & Wallace, Inc.*, 8 Mass.App.Ct. 498, 396 N.E.2d 149 at 152–54 (1979)).

43. 38 Mass.App.Ct. 545, 649 N.E.2d 791 (1995).

44. *Id.* at 794.

45. Pl. Amend. Mot. To Dismiss Counterclaims I, II, III, IV and V, at 5 n. 3.

46. It should be noted that U.S. Tape's breach of contract claim (Count III) is solely based on GHC's failure to comply with the Indemnification Clause (Count II). Because the Asset Purchase Agreement provides that U.S. Tape's

Moreover, U.S. Tape is not making claims based upon reliance on Evaluation Material, but rather, is alleging violations solely based on information in the Asset Purchase Agreement. GHC agreed to indemnify U.S. Tape for any claims arising out of its failure to fulfill its obligations in connection with the Asset Purchase Agreement. Specifically, the Indemnification Clause grants U.S. Tape Indemnification from GHC for "any ... loss ... resulting from ... (b) any material inaccuracy in or breach of any of the representations or warranties in [the Asset Purchase] Agreement or the Transaction Documents, or any Exhibit, certificate or Schedule or other writing furnished by [GHC] pursuant hereto or thereto; and (c) the Retained Liabilities...."[47]

US Tape has alleged that GHC made numerous materially inaccurate statements and breached certain representations and warranties in the Asset Purchase Agreement or other documents accompanying the Asset Purchase Agreement. In particular, GHC allegedly failed to make several material disclosures, including: (a) dozens of environmental and odor complaints by nearby residents to the Board of Health, the DEP and the EPA concerning air emissions from the manufacturing plant; (b) uncollectable amounts in its accounts receivable; (c) accounts payable in addition to those for which U.S. Tape had assumed responsibility; and (d) certain prepaid expenses that U.S. Tape purchased. There is simply nothing in the

Asset Purchase Agreement's Integration Clause that precludes these claims. These allegations state a claim for relief.

### 2. US Tape States A Claim For Breach Of The Implied Contractual Duty Of Good Faith And Fair Dealing

 "Every contract in Delaware has an obligation of good faith and fair dealing, which is implied into the agreement by law."[48] Although sometimes couched as a duty, this obligation is actually contractual in nature. "As such, a party to a contract has made an implied covenant to act reasonably to fulfill the intent of the parties to the agreement."[49] "This implied covenant was created to promote the spirit of the agreement and to protect against one side using underhanded tactics to deny the other side the fruits of the parties' bargain."[50] "Were it not for this covenant, parties to a contract could undermine and frustrate every legal obligation entered into."[51]

 US Tape's principal complaint with regard to this duty is GHC's failure to disclose information relating to the prepaid expenses.[52] US Tape paid for this asset as part of the Asset Purchase Agreement. During the due diligence period U.S. Tape requested full disclosure of these prepaid expenses. GHC never provided a list of the specific prepaid expenses, despite several requests. As a

---

sole remedy for contractual claims shall be indemnification, Count III which purports to state a claim for breach of contract must be dismissed.

**47.** Asset Purchase Agreement § 10.1.

**48.** *Kelly v. McKesson HBOC, Inc.*, 2002 WL 88939, at *10 (Del.Super. Jan. 17, 2002) (citing *Chamison v. HealthTrust, Inc.*, 735 A.2d 912, 920 (Del.Ch.1999)).

**49.** *Id.*

**50.** *Id.*

**51.** *Standard Distrib. Co. v. NKS Distrib., Inc.*, 1996 WL 944898, at *6 (Del.Super. Jan. 3, 1996) (citing *Katz v. Oak Indus., Inc.*, 508 A.2d 873, 881 (Del.Ch.1986)).

**52.** *See* Def. Ans. Br. at 13.

result of GHC's failure to disclose what entities were paid in advance, U.S. tape was prevented from receiving the benefit of the prepaid expenses because it was unable to determine what vendors were prepaid.

 GHC argues that such a claim for the breach of the implied duty of good faith and fair dealing is barred by virtue of the Indemnification Clause coupled with the Sole Remedy Clause. To support this argument, GHC points to the well-established rule in Delaware that "[w]here a written contract exists which includes a specific indemnification provision setting forth the rights and duties of the parties, the specific provision should govern and the courts should not enlarge the right to indemnification by implication." [53] Following this well-established rule, the court concludes that the Indemnification Clause is sufficiently broad to cover a contractual claim for a breach of the implied duty of good faith and fair dealing.

 Among other things, the Indemnification Clause requires GHC to indemnify U.S. Tape for "any damage, loss, cost, or expense ... resulting from ... any failure by [GHC] to perform, abide by or fulfill any of the material agreements ... in connection with this Agreement...." [54] As a matter of law, it cannot be that, after receiving more than $200,000 for prepaid expenses, GHC has no obligation to identify what expenses or vendors have been paid. Failure to provide this information causes damage to U.S. Tape resulting from GHC's failure to fulfill its agreement to sell valuable prepaid expenses (that could ultimately be utilized but for GHC's nondisclosure of specific accounts). Thus, the court concludes U.S. Tape has estab-

lished a cause of action for a breach of the implied covenant of good faith and fair dealing, subject to the limitations and restrictions of the Indemnification and Sole Remedy Clauses.

## VI.

For the foregoing reasons, GHC's motion to dismiss Counts I, II, IV and V of the counterclaim is **DENIED**. GHC's motion to dismiss Count III is **GRANTED**.[55] IT IS SO **ORDERED**.

---

**53.** *Waller v. J.E. Brenneman Co.,* 307 A.2d 550, 553 (Del.Super.1973).

**54.** Asset Purchase Agreement § 10.1.

**55.** *See* note 10, *supra.*