**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: March 22, 2022
Date Decided:  March 23, 2022

Blake Rohrbacher, Esquire
Kevin M. Gallagher, Esquire
Alexander M. Krischik, Esquire
Christian C.F. Roberts, Esquire
Richards, Layton & Finger, P.A.
920 North King Street
Wilmington, DE  19801

Mr. Ercin Eksin
Mennica Legacy Tower
Prosta 20
Warszawa, 00-850
Poland
ercineksin@gmail.com

Re:  *Lidya Holdings Inc., et al. v. Ercin Eksin*
C.A. No. 2021-0110-JRS

Dear Counsel and Mr. Eksin:

In a letter opinion filed January 31, 2022 (the "Letter Opinion"), I dismissed five of the six counterclaims brought by Ercin Eksin against Lidya Holdings Inc. ("Lidya" or the "Company"), leaving only Eksin's claim for wrongful termination for further consideration.[1]  I requested supplemental briefing on the question of whether Eksin had stated a viable claim for breach of the implied covenant of good faith and fair dealing.

---

[1] *Lidya Hldgs. Inc. v. Eksin*, 2022 WL 274679 (Del. Ch. Jan. 31, 2022) ("Ltr. Op.").

After reviewing the parties' supplemental submissions, for the reasons explained below, I am satisfied that Eksin has not stated a viable claim for wrongful termination as a matter of Delaware law. Accordingly, Lidya's motion to dismiss must be granted in full.

## I.  BACKGROUND

I provided a recitation of the facts related to the parties' relationship and the origin of this dispute in the Letter Opinion and will not repeat those facts here.[2] I recite additional facts below, as pled, that relate specifically to Eksin's wrongful termination claim.

According to Eksin, he was terminated as co-CEO of Lidya essentially for two reasons.[3] First, Lidya's board of directors (the "Board") reacted poorly when Eksin questioned the Board's commitment to the Company after its members sabotaged Eksin's attempts to secure additional investments to support Lidya's

---

[2] Ltr. Op. at *1–3.

[3] Verified Countercls. Against Counter-Defs. ("Countercl.") (D.I. 49) ¶¶ 1, 21, 95.

growth.[4]  Second, the Board accepted without proper investigation a fabricated claim that Eksin had harassed a Lidya employee.[5]

Under Lidya's bylaws, Eksin served at the will of the Board and could be terminated with or without cause.[6]  From its perspective, the Board exercised its authority to terminate Eksin's at-will employment based on its review of the employee's harassment claim and because Eksin had exhibited other unprofessional behavior.[7]

Eksin brought six counts in his counterclaims.[8]  As noted, in the Letter Opinion, I dismissed all counterclaims except the claim for wrongful termination.[9] As for that claim, I observed, "[a]s I understand the pled facts, Eksin alleges that the Board and a Lidya employee fabricated a harassment claim" to create a

---

[4] Countercl. ¶¶ 66–71.

[5] Countercl. ¶¶ 74–79.

[6] Ltr. Op. at *6.

[7] Countercl. ¶¶ 77, 85, 100–01.

[8] Countercl. ¶¶ 114–42.

[9] Ltr. Op. at *1–2.

seemingly legitimate basis to terminate him.[10]   I questioned whether those allegations might state a claim for breach of the implied covenant of good faith and fair dealing as recognized in *E.I. DuPont de Nemours & Co. v. Pressman*.[11]

While the doctrine of at-will employment generally allows an employer to terminate an at-will employee for any lawful reason, *Pressman* held that "the [implied] [c]ovenant permits a cause of action against an employer for the deceitful acts of its agent in manufacturing materially false grounds to cause an employee's dismissal."[12]  As neither party discussed *Pressman* or its progeny in the briefs related to Lidya's motion to dismiss, I asked for supplemental briefing on this point.[13]  As noted, Lidya filed a supplemental letter memorandum on February 14, 2022.[14]  Eksin filed his response on March 22, 2022.[15]

---

[10] *Id.* at *6; *id.* n.64 (collecting factual allegations in the counterclaims).

[11] 679 A.2d 436 (Del. 1996).

[12] *Id.* at 437.

[13] Ltr. Op. at *7.

[14] D.I. 72.

[15] D.I. 73.

## II.  ANALYSIS

The standard for deciding a motion to dismiss under Court of Chancery

Rule 12(b)(6) is well-settled:

> (i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the Plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[16]

While the court may relax the pleading standards for a self-represented litigant, the court cannot excuse that litigant from the requirement of stating a viable claim in his pleading as a predicate to requiring his adversary to defend the claim in litigation.[17]

---

[16] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (citation omitted).

[17] *Hayward v. King*, 127 A.3d 1171, 2015 WL 6941599, at *4 (Del. 2015) (TABLE); *see also Draper v. Med. Ctr. of Del.*, 767 A.2d 796, 799 (Del. 2001) ("There is no different set of rules for *pro se* plaintiffs, and the trial court should not sacrifice the orderly and efficient administration of justice to accommodate an unrepresented plaintiff.").

Delaware's at-will doctrine "generally permits the dismissal of employees without cause and regardless of motive."[18] As *Pressman* recognized, however, the at-will relationship is subject to the implied covenant of good faith and fair dealing.[19] As our law has evolved since *Pressman*, it is now settled that an employer violates the implied covenant in the at-will employment context in four instances:

> (i) where the termination violated public policy; (ii) where the employer misrepresented an important fact and the employee relied 'thereon either to accept a new position or remain in a present one';

---

[18] *Pressman*, 679 A.2d at 437.

[19] *Id.* ("[W]e consider the scope of the employment-at-will doctrine . . . and the correlative application of the implied duty or covenant of good faith and fair dealing . . . as a limitation on the [at-will d]octrine."). Lidya argues in its supplemental submission that the implied covenant is not applicable here because Eksin concedes he had no employment contract with Lidya. *See* Countercl. ¶ 55. In other words, Lidya maintains that, "without a contract, there can be no implied covenant of good faith and fair dealing for [the defendant] to have breached." Lidya Hldgs. Inc.'s Opening Letter Mem. to the Hon. Joseph R. Slights III ("Lidya Suppl. Submission") at 2 (citing *Encite LLC v. Soni*, 2008 WL 2973015, at *12 (Del. Ch. Aug. 1, 2008)). While I agree that Lidya has accurately stated Delaware law, *Pressman* appears to mark an instance where our law will imply a covenant of good faith even in the absence of a contract. *See Pressman*, 679 A.2d at 442 ("[T]he jury necessarily found that Pressman did not have a promise of secure employment."); *id.* at 444 (observing that "an assurance of continued employment is antithetical to at-will employment"); *id.* at 437 (holding that the implied covenant can be implicated in the at-will employment relationship). Nevertheless, even assuming the implied covenant paradoxically applies when an underlying contract does not exist, as explained below, Eksin has not pled facts that allow an inference that the implied covenant was breached in connection with the termination of his employment.

(iii) where the employer used its superior bargaining power to deprive an employee of clearly identifiable compensation related to the employee's past service; and (iv) where the employer falsified or manipulated employment records to create fictitious grounds for termination.[20]

The first three of these "categories" very clearly are not implicated by Eksin's termination. Eksin does not "assert [that his termination triggers] a public interest recognized by some legislative, administrative or judicial authority";[21] he does not allege that he relied on a misrepresentation of the employer "to accept a new position or remain in a present one";[22] and he does not allege Lidya deprived him

---

[20] *Lord v. Souder*, 748 A.2d 393, 400 (Del. 2000) (citing *Pressman*, 679 A.2d at 442–44); *see id.* at 401 ("[W]e agree with the Superior Court that *Pressman's* categories are exclusive. . . . Requiring at-will employee-plaintiffs to fit within one of the four established *Pressman* categories will prevent further erosion of an employment at-will doctrine already riddled with exceptions.").

[21] *Id.* at 401.

[22] *Id.* at 400 (citing *Pressman*, 679 A.2d at 442). In his response, Eksin asserts that he "kept working under the pretense that Lidya Board [sic] would provide his employment contract in which they kept promising but never delivered." Resp. to Opening Letter Mem. ("Eksin Resp.") (D.I. 73) at 5. But, as Lidya correctly points out, "Eksin nowhere alleges [in his counterclaim] that he was fraudulently induced to accept a new position or remain in an existing one." Lidya Suppl. Submission at 4.

of previously earned compensation, such as vested stock options.[23]  For Eksin's claim to survive dismissal, he must plead facts that support a reasonable inference the "employer falsified or manipulated employment records to create fictitious grounds for termination."[24]

---

[23] *See Pressman*, 679 A.2d at 442 ("Another exception [to at-will employment] applies when an employer uses its superior bargaining power to deprive the employee the employee of compensation that is clearly identifiable and is related to the employee's past service.") (cleaned up); *Smith v. Scott*, 2021 WL 1592463, at *7 (Del. Ch. Apr. 23, 2021) (finding that allegations defendants "violated the [implied c]ovenant by purporting to fire [the plaintiff] for cause when, in fact, their sole motivation was to take his [v]ested [i]nterests without compensation" were well-pled).  In his response, Eksin argues he has stated a claim under this exception because he alleges that Lidya "diluted Eksin's ownership of shares by issuing additional common shares with no economic justification." Eksin Resp. at 6.  Not only are these facts absent from his counterclaim, but they also do not constitute a deprivation of "clearly identifiable compensation related to the employee's past service." *Lord*, 748 A.2d at 400; *see generally* Countercl.

[24] In its supplemental submission, Lidya argues that the three cases I cited in the Letter Opinion as examples where *Pressman* was applied in the wrongful termination context should be understood to fall within the third category.  Lidya Suppl. Submission at 4–6; *see Sheehan v. AssuredPartners, Inc.*, 2020 WL 2838575 (Del. Ch. May 29, 2020); *Smith*, 2021 WL 1592463; *SerVaas v. Ford Smart Mobility LLC*, 2021 WL 3779559 (Del. Ch. Aug. 25, 2021).  I agree that, factually, each of the cited cases appear to fall into that category, despite all three cases relying on language from *Pressman* regarding the fourth exception to at-will employment, focusing on the improper purpose of the employer.  *Sheehan*, 2020 WL 2838575, at *11 (stating that the complaint "adequately pleads that 'the defendant's conduct [was] driven by an improper purpose'" and referring to the fourth exception); *Smith*, 2021 WL 1592463, at *7 (citing *Sheehan*) (focusing on the improper purpose of the employer); *SerVaas*, 2021 WL 3779559, at *10 (relying on

In *Pressman*, the plaintiff's supervisor created a false record to "establish a fictitious basis for termination."[25] Our Supreme Court held that this act violated the implied covenant, which "permits a cause of action against an employer for the deceitful acts of its agent in manufacturing materially false grounds to cause an employee's dismissal."[26]

Since this seminal decision in 1996, Delaware courts have emphasized that *Pressman* must be narrowly construed and applied. In this regard, some cases have interpreted *Pressman* as holding that an employer will breach the implied covenant only when it "falsifies or manipulates *a record* to create fictitious grounds to terminate employment."[27] Others have latched onto *Pressman*'s broader language

---

*Sheehan* and *Smith*). While the fourth category is referenced, I agree with Lidya that *Sheehan*, *Smith*, and *SerVaas* are each distinguishable from the present case as they focus on the financial purpose of the termination, whereas Eksin, as best I can tell, attempts to plead that his firing was the product of a fabricated justification created by the Lidya Board to hide its true motivation.

[25] *Pressman*, 679 A.2d at 444.

[26] *Id.* at 437.

[27] *Id.* at 443–44 (emphasis added); *see id.* at 444 ("Since an assurance of continued employment is antithetical to at-will employment, no legally cognizable harm arises solely from the termination itself. Here, the harm derives from [the supervisor's] creation of

indicating that the relevant inquiry is whether the employer "manufactur[ed]

materially false grounds," not whether the employer falsified records to justify its

termination decision.[28]  Regardless of whether *vel non* actual record falsification is

---

false grounds and manufacturing a record in order to establish a fictitious basis for termination."); *see also Rizzitiello v. McDonald's Corp.*, 868 A.2d 825, 831 (Del. 2005) ("One category is established where the employer or the employer's agents have falsified or manipulated an employee's record to create a fictitious ground to terminate the employee. . . .  To support a claim falling into this category, the plaintiff has the burden to prove both falsification of her records and termination of her employment."); *Shomide v. ILC Dover, Inc.*, 521 F. Supp. 2d 324, 333 (D. Del. 2007) ("Even if defendant gave plaintiff a false reasons for his layoff, plaintiff may not recover if defendant did not actually falsify or manipulate employment records."); *Addison v. East Side Charter School of Wilm., Inc.*, 2014 WL 4724895, at *7 (Del. Super. Ct. Sept. 19, 2014) ("Even if an employer gives a false reason for an employee's layoff, an employee may not recover under *Pressman* unless the employer actually falsifies or manipulates employment records."); *Layfield v. Beebe Med. Ctr., Inc.*, 1997 WL 716900, at *5 (Del. Super. Ct. July 18, 1997) (noting that the plaintiff must show that the employer "falsified or manipulated her record to create fictitious grounds for termination").

[28] *Pressman*, 679 A.2d at 437; *see also Lawver v. Christiana Care Health Sys., Inc.*, 2017 WL 1167321, at *4 (Del. Super. Ct. Feb. 21, 2017) (holding that "[m]anufacturing materially false grounds *includes* the falsification or manipulation of employment records to create fictitious grounds for termination") (emphasis added); *Smith*, 2021 WL 1592463, at *7 n.80 ("I note that subsequent applications of *Pressman* have clarified that actual falsification of documents to justify a termination decision is not required to sustain a claim that the employer breached the Covenant by manufacturing a basis to terminate for cause.") (citing *Lawver*); *Schuster v. Derocili*, 775 A.2d 1029, 1037 (Del. 2001) ("In *DuPont v. Pressman*, we held that an employee was entitled to recover damages for wrongful termination based on fictitious grounds, as an application of the good faith and fair dealing exception to the employment-at-will doctrine."); *Cosby v. Correct Care*

required to state a claim under *Pressman*'s fourth exception, our courts are

consistent in understanding that "*Pressman* is a narrow holding,"[29] deliberately

limiting the application of the decision to ensure that the implied covenant does not

"swallow the rule" of at-will employment.[30]

      With this in mind, even assuming the pled facts are true, Eksin has failed to

state a viable claim under *Pressman*'s fourth exception to the at-will employment

---

*Sols., LLC*, 2016 WL 7103387, at \*4 (Del. Super. Ct. Dec. 6, 2016) ("[T]he employee must show that the employer intentionally *created false reasons* to terminate the employee *or* that the employer falsified the employee's records.") (emphasis added); *Layfield*, 1997 WL 716900, at \*5 (denying *Pressman* claim because "there [was] no evidence that [defendant] created fictitious grounds to terminate her, or that [defendant] acted fraudulently or deceitfully").

[29] *Gilliland v. St. Joseph's at Providence Creek*, 2006 WL 258259, at \*8 (Del. Super. Ct. Jan. 27, 2006); *Hudson v. Wesley College, Inc.*, 1998 WL 939712, at \*12 (Del. Ch. Dec. 23, 1998) (noting the "narrow role" the implied covenant played in *Pressman*), *aff'd*, 734 A.2d 641 (Del. 1999); *Layfield v. Beebe Med. Ctr., Inc.*, 1997 WL 817994, at \*5 (Del. Super. Ct. Nov. 24, 1997) ("The Supreme Court emphasized in *Pressman* that the employment at-will doctrine is broad, while the implied covenant is extremely narrow.").

[30] *DeNoble v. DuPont Merck Pharm. Co.*, 1997 WL 35410094, at \*4 (Del. Super. Ct. Apr. 11, 1997) ("To allow an employee at-will to contest the reasons stated by an employer for discharge would allow the covenant to swallow the rule."), *aff'd*, 703 A.2d 643 (Del. 1997) (TABLE); *see also Layfield*, 1997 WL 716900, at \*4 ("I conclude that *Pressman* does not stand for the proposition that whenever an employer terminates an at-will employee in the context of a factually disputed work incident, as here, the employer exposes itself to a lawsuit for breach of the covenant.").

doctrine. Lidya argues this case is more analogous to *Gilliland v. St. Joseph's at Providence Creek* than to *Pressman*.[31] I agree. In *Gilliland*, the founder of a nonprofit corporation was terminated by the corporation's board following a dispute over his performance.[32] The court distinguished *Pressman* on the grounds that Gilliland "was discharged with the Board being aware of the row and Plaintiff's position" and there was no "secret campaign [by the Board] to attack Plaintiff."[33] Indeed, Gilliland "was involved in the discussions about his job performance and thus in a position to defend himself from accusations coming from within the organization," whereas "*Pressman* involved deceit and falsehoods which were used to create fictitious grounds for termination."[34] With those distinctions in mind, the court dismissed the wrongful termination claim.[35]

---

[31] *Gilliland*, 2006 WL 258259.

[32] *Id.* at *2.

[33] *Id.* at *7–8.

[34] *Id.* at *7.

[35] *Id.* at *8.

Eksin, like the plaintiff in *Gilliland*, was a company leader.[36]  As co-CEO and Board member, he had ample opportunity to defend himself and explain his position with respect to the harassment claim and identified job performance issues—and did so.[37]  He hired counsel to represent him in the process.[38]  And he had the benefit of a three-month investigation led by a special committee advised by its own independent counsel.[39]  Even assuming that the Board was keen to remove Eksin (as it could do for any lawful reason under the bylaws[40]), unlike the plaintiff in *Pressman*, Eksin was not powerless to defend himself against a trumped-up basis for termination that was sprung on him at the time the decision to terminate was announced.  This termination followed the investigation of a known (and

---

[36] *See id.* at *7 ("He was the top dog and was involved in the discussions about his job performance and thus in a position to defend himself from accusations coming from within the organization.").

[37] Countercl. ¶¶ 78, 95, 97, 99–101.

[38] Countercl. ¶ 95.

[39] Countercl. ¶¶ 78–79, 100.

[40] *See* Ltr. Op. at *6 ("Lidya's bylaws provide that officers serve 'at the pleasure of the Board of Directors' and 'may be removed by the Board of Directors with or without cause.'") (citing Lidya bylaws Art. III).

vetted) dispute between Eksin and another employee. "When employers are faced with accusations among its employees of 'he said, she said,' the employer should be given the right to resolve the disputes in the employer's best interest by exercising its right to end the employment relationship."[41]

Against this backdrop, fully acknowledged in Eksin's counterclaim, I cannot conclude that Eksin has pled a valid basis to apply the implied covenant to modify his at-will employment relationship with Lidya.[42] To hold otherwise would be to

---

[41] *Gilliland*, 2006 WL 258259, at *8. I note that the Board expressed other reasons for investigating and ultimately terminating Eksin as co-CEO of Lidya. Eksin acknowledges that the Board also terminated him because his behavior was "unprofessional" and "bullying," and that the Board observed in its minutes that Eksin's "inability to accept constructive feedback, and sometimes needless aggression, and then lack of maturity, has progressively shrunk the space for meaningful dialogue at board meetings." Countercl. ¶ 101; Pls.'/Counter-Defs.' Opening Br. in Supp. of Their Mot. to Dismiss Countercls. Ex. 1 (D.I. 51) at 7. Exhibit 1 is integral to Eksin's counterclaims regarding the January 12 meeting. *See* Countercl. ¶¶ 96–102; *Gloucester Hldg. Corp. v. U.S. Tape & Sticky Prods., LLC*, 832 A.2d 116, 123 (Del. Ch. 2003) (noting that the court can consider "the content of documents that are integral to or are incorporated by reference into the counterclaim"); *see also Gilliland*, 2006 WL 258259, at *6 (observing that employers may terminate at-will employees for "highly subjective reasons") (citing *Merrill v. Crothall-American, Inc.*, 606 A.2d 96, 101 (Del. 1992)); *Pressman*, 679 A.2d at 441 (same); *id.* at 444 ("Dislike, hatred or ill will, alone, cannot be the basis for a cause of action for termination of an at-will employment.").

[42] Eksin's supplemental response asserts nothing to suggest otherwise. He argues *Gilliland* is not analogous because Eksin was not really fired for his "job performance" as

allow the implied covenant to "swallow the rule" of at-will employment.[43]  That is

exactly what *Pressman* and its progeny have preached should be carefully

avoided.[44]

---

"Lidya has been very successful under [his] leadership."  Eksin Resp. at 7.  Even if this were true, Eksin misses the relevant inquiry implicated by a claim of wrongful termination of at-will employment in at least two ways.  First, "job performance" is not strictly limited to the financial performance of the Company.  As noted, the Board terminated Eksin's employment because of the harassment claim and unprofessional behavior, which comprise, in part, his "job performance."  Second, and more importantly, *Gilliland* is analogous because, like Eksin, the plaintiff in *Gilliland* was in a position of power to know of the allegations against him and to defend himself against them, and because, like the Board here, the board in *Gilliland* made a business decision to investigate and then terminate the founder when a dispute arose.  The similarities have nothing to do with the financial success of the subject company.  Eksin's argument that "[t]here was never any discussion about Eksin's job performance" because the "Lidya Board always commended the performance of Lidya including the successful expansion of Lidya" suffers from the same disconnect.  Eksin Resp. at 7.  That may have been true in the past; it was not true, however, as Eksin himself alleges, after the harassment allegations were lodged against him and after the Board became frustrated by Eksin's disruptive conduct.  I also note that Eksin's allegations regarding the Board's attempt to "put a good public face [sic]" on his termination, raised for the first time in his supplemental submission, are irrelevant to whether his termination was wrongful.  *Id.* at 9–10.

[43] *DeNoble*, 1997 WL 35410094, at *4.

[44] *See, e.g.*, *Rizzitiello*, 868 A.2d at 830–31 ("[T]he doctrine of at-will employment is broad and the implied covenant is to be narrowly construed.") (citing *Pressman*, 679 A.2d at 437); *Dunn v. FastMed Urgent Care, P.C.*, 2019 WL 4131010, at *6 (Del. Ch. Aug. 30, 2019) ("Courts have been reluctant to recognize a broad application of the implied covenant out of a concern that the covenant could thereby swallow the employment-at-

### III.  CONCLUSION

For the foregoing reasons, the motion to dismiss Count 5 of Eksin's counterclaims must be GRANTED.  With this, all counterclaims asserted against Lidya are dismissed with prejudice.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*

---

will doctrine and effectively end at-will employment.") (cleaned up) (quoting *Pressman*, 679 A.2d at 442).