**COURT OF CHANCERY**
**OF THE**
**STATE OF DELAWARE**

JOSEPH R. SLIGHTS III
VICE CHANCELLOR

417 S. State Street
Dover, Delaware 19901
Telephone: (302) 739-4397
Facsimile: (302) 739-6179

Date Submitted: March 15, 2021
Date Decided: March 23, 2021

John A. Sensing, Esquire
Clarissa R. Chenoweth-Shook, Esquire
Potter Anderson & Corroon LLP
1313 North Market Street
Wilmington, DE 19801

William D. Sullivan, Esquire
William A. Hazeltine, Esquire
Sullivan Hazeltine Allinson LLC
919 North Market Street, Suite 420
Wilmington, DE 19801

Re: *SPay, Inc. v. Stack Media Inc. k/n/a JLC2011, Inc., et al.*
C.A. No. 2020-0540-JRS

Dear Counsel:

This dispute between SPay, Inc. and Stack Media, Inc. k/n/a JLC2011, Inc.
("Stack") involves the applicability and enforceability of a forum selection clause in
a May 3, 2017, asset purchase agreement ("APA" or "Agreement") whereby SPay
agreed to acquire substantially all of Stack's assets. SPay moves for a preliminary
anti-suit injunction (the "Motion") to prevent Defendants, Stack and Nick Palazzo,
from prosecuting certain claims in a New York state court arising out of the APA in
alleged violation of the APA's forum selection clause, which designates Delaware

as the sole and exclusive forum for the litigation of such claims. For the reasons

explained below, SPay's motion for preliminary injunction must be granted.[1]

## I. BACKGROUND

SPay and Stack consummated a transaction under the APA on June 13, 2017,

whereby SPay acquired substantially all of the assets of Stack.[2] At the time of the

---

[1] I note that Defendants have expressed some concern regarding the entry of an injunction against them when the issue of personal jurisdiction has been raised in another context in this case. In supplemental submissions to the Court, Defendants argue that resolution of the Motion should be deferred pending the resolution of their motion to dismiss, where they argue the Court lacks personal jurisdiction over Palazzo regarding claims related to the so-called Restrictive Covenant Agreements (later defined herein). Ltr. to Vice Chancellor Slights from William Sullivan Regarding Supp. Submissions (D.I. 121). Of course, Defendants conceded at oral argument that the Court has personal jurisdiction over Stack with respect to all claims asserted against it in the Complaint and over Palazzo with respect to at least some claims asserted against him. Telephonic Oral Arg. on Pl's Mot. for Prelim. Inj. (D.I. 122) at 28. In any event, even if the Court might otherwise lack personal jurisdiction over Palazzo with respect to certain claims, Palazzo has consented to personal jurisdiction in this Court as to the claims captured within the APA's forum selection clause (which also includes a consent to jurisdiction clause). *See EBG Hldgs. LLC v. Vredezicht's Gravenhage 109 B.V.*, 2008 WL 4057745, at *9 (Del. Ch. Sept. 2, 2008) (recognizing that parties to a contract may "submit to a given court's [personal] jurisdiction by contractual consent"); *Carlyle Inv. Mgmt. L.L.C. v. Nat'l Indus. Gp. (Hldg.)*, 2012 WL 4847089, at *6 (Del. Ch. Oct. 11, 2012) (same). Thus, there is no reason to defer on personal jurisdiction grounds the resolution of SPay's attempt to enforce the APA's forum selection clause.

[2] Verified Second Am. Compl. ("Am. Compl.") (D.I. 116) ¶ 27; Am. Compl., Ex. A ("APA").

sale, Nick Palazzo was the co-founder and CEO of Stack.[3]  Contemporaneously with the closing of the transaction, Palazzo agreed to enter into certain Restrictive Covenant Agreements ("RCAs") which, among other things, prevented Palazzo from competing with SPay.[4]  SPay filed this Action on July 1, 2020, alleging, *inter alia*, that Defendants concealed Stack's largest customer and creditor relationship with a Canadian entity, Mundo Media, and then misappropriated millions of dollars in cash payments received from Mundo after the transaction.[5]

On October 23, 2020, Palazzo and Stack filed suit against SPay in New York state court, (1) alleging that Palazzo and Stack were fraudulently induced to execute the APA and RCAs and (2) seeking a declaratory judgment that particular provisions of the RCAs were unenforceable (the "New York Action").[6]  On December 3, 2020, SPay notified Palazzo and Stack that, in its view, the prosecution of the New York

---

[3] Am. Compl. ¶ 15.

[4] Am. Compl., Ex. B ("RCAs") § 1.c.

[5] Am. Compl. ¶ 1.

[6] Opening Br. in Supp. of Pl. SPay, Inc.'s Mot. for Prelim. Inj. ("OB") (D.I. 86), Ex. B ("New York Complaint") ¶ 47–58.

Action violated Section 9.2 of the APA (the "Forum Selection Clause") and demanded that Palazzo and Stack withdraw the lawsuit.[7] Palazzo and Stack declined and SPay filed the Motion soon after.[8]

The APA's Forum Selection Clause reads, in relevant part: "Each of the parties irrevocably submits to the exclusive jurisdiction of the Delaware Court of Chancery . . . for the purposes of any suit, action or other proceeding arising out of this Agreement or any transaction contemplated hereby."[9]  According to SPay, Defendants' fraudulent inducement claim in the New York Action is a claim that "aris[es] out of" the APA and, therefore, as a matter of contract, must be prosecuted in Delaware.  As for Defendants' declaratory judgment claim regarding the enforceability of certain RCAs, SPay argues that the RCAs are "transactions [expressly] contemplated by" the APA such that any claim arising out of the RCAs is also captured by the Forum Selection Clause.  Because I agree with SPay on both points, the Motion must be granted in its entirety.

---

[7] OB, Ex. J.

[8] (D.I. 86).

[9] APA § 9.2.

## II. ANALYSIS

A party seeking a preliminary injunction in this court must demonstrate: (1) a reasonable likelihood of success on the merits of its claim; (2) it would be irreparably harmed if the court were to deny relief; and (3) the balance of hardships tips in its favor.[10] There is little dispute that if the APA governs the claims in the New York Action, Defendants' prosecution of those claims outside of Delaware in violation of the Forum Selection Clause itself establishes irreparable harm.[11] Likewise, if Defendants are in breach of the Forum Selection Clause, the balance of the equities would favor SPay because Defendants will suffer no harm by being forced to bring their claims in the forum where they agreed by contract to litigate.[12]

---

[10] *Revlon, Inc. v. MacAndrews & Forbes Hldgs., Inc.*, 506 A.2d 173, 179 (Del. 1986).

[11] *BE & K Eng'g Co., LLC v. RockTenn CP, LLC*, 2014 WL 186835, at *23 (Del. Ch. Jan. 15, 2014), *aff'd*, 103 A.3d 512 (Del. 2014) ("Under binding Delaware Supreme Court precedent, a party suffers irreparable harm when forced to litigate in a jurisdiction other than the one selected by a valid forum selection clause.").

[12] *See id.* at *24 ("[T]he Rock–Tenn Defendants will suffer no harm if they are required to honor the Delaware Forum Provision to which they voluntarily agreed. Any harm they might suffer is 'entirely self-inflicted' and stems from their choice to select a forum and then disregard it."); *Carlyle Inv. Mgmt.*, 2012 WL 4847089, at *11 (noting that "[t]here is nothing unreasonable about enforcing the forum selection clause against [the resisting party], because any harm it has suffered is entirely self-inflicted").

The only real dispute, therefore, is whether SPay has demonstrated a reasonable likelihood of success on the merits. In other words, does the Forum Selection Clause cover the claims asserted in the New York Action?

Anti-suit injunctions are "not granted lightly" in this court.[13] Indeed, the court will enjoin a party from prosecuting an action elsewhere based on a forum selection clause only where "the language selected makes it absolutely clear the parties believed that [this] court should forever be the only forum for resolving a dispute."[14] With that said, when the language is absolutely clear, the anti-suit injunction will issue.[15] As explained below, the Forum Selection Clause is absolutely clear; both the fraudulent inducement claim and the claim for declaratory judgment regarding the RCAs must be litigated in Delaware.

---

[13] *FP UC Hldgs., LLC v. Hamilton*, 2020 WL 1492783, at \*5 (Del. Ch. Mar. 27, 2020).

[14] *Eisenbud v. Omnitech Corp. Sols., Inc.*, 1996 WL 162245, at \*2 (Del. Ch. Mar. 21, 1996).

[15] *BE & K*, 2014 WL 186835, at \*24.

### A. The Fraudulent Inducement Claim

As noted, the Forum Selection Clause dictates that claims "arising out of" the APA be brought in Delaware. "The concept of 'arising out of' is a broad one."[16] Not surprisingly, the parties agree that a direct breach of contract claim under the APA would be captured by the Forum Selection Clause. But Defendants argue that their fraudulent inducement claim, where they allege they were induced by fraud to execute the APA, falls outside the Forum Selection Clause. Our law says otherwise.

Black's Law Dictionary defines "arise" to mean, "[t]o originate; to stem (from),"[17] implying that where parties to a contract animate their forum selection clause with "arising out of" language, as long as the claims "stem from the contractual relationship," then "[a]n action need not [] allege contract-based claims in order for the forum selection clause in [the] contract to be enforced."[18] A claim

---

[16] *Matria Healthcare, Inc. v. Coral SR LLC*, 2007 WL 763303, at *8 n.35 (Del. Ch. Mar. 1, 2007).

[17] *Arise*, Black's Law Dictionary (11th ed. 2019). *See Freeman v. X-Ray Assocs., P.A.*, 3 A.3d 224, 227–28 (Del. 2010) ("Because dictionaries are routine reference sources that reasonable persons use to determine the ordinary meaning of words, we often rely on them for assistance in determining the plain meaning of undefined terms.").

[18] *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 220 (3d Cir. 2015).

that a party to a contract was fraudulently induced to enter that contract undoubtedly "originate[s]" or "stem[s] from the contractual relationship."

In *Parfi Holding AB v. Mirror Image Internet, Inc.*, then-Vice Chancellor Strine considered whether a breach of fiduciary duty claim "ar[ose] out of or in connection with" the contract at issue.[19] If so, under a mandatory arbitration clause within the contract, the fiduciary duty claim was subject to dismissal in favor of arbitration. While holding that the fiduciary duty claim did not arise out of the contract, the court observed that "[t]he first phrase of the clause, which requires arbitration of claims 'arising out of' the Agreement, would seem to cover direct claims for breach of the Agreement or *fraud in the inducement*."[20]

While a fraud claim was not directly before the court in *Parfi*, the court's observation regarding the connection between a fraudulent inducement claim and

---

[19] 794 A.2d 1211, 1226 (Del. Ch. 2001), *rev'd*, 817 A.2d 149 (Del. 2002) ("*Parfi I*"). While the Supreme Court reversed the trial court's decision and held that the fiduciary duty claim arose "in connection with" the agreement at issue, the Court did not disturb the trial court's view regarding the reach of the "arising out of" language in the arbitration clause. *Parfi Holding AB v. Mirror Image Internet, Inc.*, 817 A.2d 149, 157 (Del. 2002) ("*Parfi II*").

[20] *Parfi I*, 794 A.2d at 1226 (emphasis added).

the contract the plaintiff alleges he was induced to enter stands out as entirely logical and consistent with the elements of a fraudulent inducement claim.[21] "To establish fraud in the inducement, . . . [a plaintiff is] required to establish the elements of common law deceit, which include misrepresentation of a material fact, made to induce action, and reasonable reliance on the false statement to the detriment of the person relying."[22] But, detrimental reliance in the context of an inducement to enter

---

[21] Defendants argue, without authority, that when parties decline to include a forum selection clause that covers all claims "arising out of *or related to* this Agreement, whether in tort or contract," similar to the forum selection clause in *CA, Inc. v. Ingres Corp.*, 2009 WL 4575009, at *46 (Del. Ch. Dec. 7, 2009), *aff'd*, 8 A.3d 1143 (Del. 2010) (emphasis added), they have demonstrated their intent to limit the reach of the clause to breach of contract claims only. Defs.' Answering Br. in Opp. to Pl. SPay, Inc.'s Mot. for Prelim. Inj. (D.I. 93), at 19–20. When pressed at oral argument, Defendants could not point to a single Delaware case where the court held that the "related to" language is necessary for a forum selection clause to encompass fraudulent inducement claims. This is not surprising since our courts say otherwise. *See Parfi I*, 794 A.2d at 1226; *Matria*, 2007 WL 763303, at *8.

[22] *Gloucester Hldg. Corp. v. U.S. Tape & Sticky Prod., LLC*, 832 A.2d 116, 124 (Del. Ch. 2003) (internal quotations omitted).

into a contract necessarily presupposes that a contract exists; if there is no contract, then there is no reliance/inducement and likely no resulting harm.[23]

Defendants' fraudulent inducement claim in the New York Action illustrates the point well. There, Palazzo and Stack allege that certain of the New York defendants made "misrepresentations and omissions with the intent to induce Palazzo and Old Stack to enter into the APA."[24] If the APA did not exist, the claim would not exist. The APA is the goal of the inducement, the product of the detrimental reliance and the source of the harm.[25] The fraudulent inducement claim "arises out of" the APA because it stems from that Agreement and would not be "independently assertable" apart from that Agreement.[26]

---

[23] Restatement (Second) of Contracts, § 164, cmt. c (Oct. 2020 Update) (noting that, in fraudulent inducement, the "misrepresentation must have induced the recipient to make the contract").

[24] New York Complaint ¶ 50.

[25] *Abry P'rs V, LP v. F & W Acq. LLC*, 891 A.2d 1032, 1058 n.57 (Del. Ch. 2006) (recognizing that the essence of a fraudulent inducement claim is that the plaintiff relied upon extra-contractual statements or promises as inducement(s) to enter into the contract).

[26] *Parfi II*, 817 A.2d at 157; *see also Matria*, 2007 WL 763303, at *8 (holding that the "fraud claims which Matria seeks to bring in this Court clearly 'aris[e] out of the [Merger Agreement]'" (alteration in original)). While *Matria* does not expressly refer to "inducement," the *Matria* complaint makes clear that the plaintiff there was alleging

To counter this construction, Defendants point to Section 9.1, the APA's choice of law clause, where the parties called out particular types of claims, including claims for fraudulent inducement, as falling within the APA's contractual choice of Delaware law. Specifically, Section 9.1 provides:

> all claims or causes of action (whether in contract, tort or otherwise) that may be based upon, arise out of or relate to this Agreement or the negotiation, execution or performance of this Agreement (including any claim or cause of action based upon, arising out of or related to any representation or warranty made in or in connection with this Agreement or as an inducement to enter into this Agreement) shall be governed and construed in accordance with the internal Laws of the State of Delaware applicable to contracts made and wholly performed within such State, without regard to any applicable conflicts of law principles that would result in the application of the Laws of any other jurisdiction.[27]

---

fraudulent inducement: "As alleged above, the representations made in Sections 3.6, 3.7, and 3.12(b) were false at the time the parties entered into the Merger Agreement and on the date of the closing of the merger, and they were made with the intent to induce Matria to close on the merger without reducing the purchase price." *Matria Healthcare, Inc. v. Coral SR LLC*, 2006 WL 4781728, at ¶ 92 (Del. Ch. Nov. 1, 1996).

[27] APA § 9.1.

To be sure, "[i]n giving sensible life to a real-world contract, courts must read the specific provisions of the contract in light of the entire contract."[28] And, when doing so, the court must consider "all [] provisions" of the contract.[29] But these canons of construction do not license the court to ignore the plain language and meaning of contractual terms.[30] The parties agreed in the Forum Selection Clause that all claims "arising out of" the APA would be litigated in Delaware. Claims for fraudulent inducement arise out of the contract the plaintiff allegedly was induced to enter. The fact that the APA was more specific elsewhere or could have been more specific in the Forum Selection Clause is of no consequence; the plain meaning of the APA dictates that the Forum Selection Clause encompasses claims for fraudulent inducement.[31]

---

[28] *Chicago Bridge & Iron Co. N.V. v. Westinghouse Elec. Co. LLC*, 166 A.3d 912, 913 (Del. 2017).

[29] *In re Viking Pump, Inc.*, 148 A.3d 633, 648 (Del. 2016).

[30] *BLG Hldgs. LLC v. enXco LFG Hldg., LLC*, 41 A.3d 410, 414 (Del. 2012).

[31] In *River Valley v. Am. Proteins*, the court was faced with a choice-of-law provision that covered "all claims, controversies and causes of action relating thereto or arising therefrom or in connection therewith, whether in contract, tort or otherwise," whereas the choice of forum provision merely covered "any actions or Proceedings arising in connection with this Agreement or the transactions contemplated hereby." *River Valley Ingredients, LLC*

**B. The Declaratory Judgment Claim**

The key dispute regarding the declaratory judgment claim is whether the RCAs are "transactions contemplated" by the APA. SPay argues that the terms of the RCAs clarify the status of each of the covenants within each contract *vis-à-vis* the APA when the parties agreed: "the covenants set forth in this Agreement are an essential element of the transactions contemplated by the [APA] and that, but for these covenants, Purchaser would not enter into the [APA]."[32] The parties' express agreement that the covenants within the RCAs "are an essential element" of the APA is a clear reflection that the RCAs are transactions "contemplated by" the APA.[33]

The Defendants argue the phrase "transactions contemplated hereby" is a term of art that is defined by the phrase "Transaction Documents" in Section 1.1 of the APA. They then reason that because "Transaction Documents" is defined to include

---

*v. Am. Proteins, Inc.*, 2020 WL 2220148, at *2 (D. Del. May 7, 2020). Nevertheless, the court concluded that the forum selection clause had to be construed on its own terms and held that the "arising in connection with" language captured a fraud claim related to the contract. *Id.* at *5.

[32] RCAs § 1.d.

[33] The RCAs are silent regarding forum selection.

only documents concerning the transfer, conveyance, assignment or delivery to SPay of substantially all of the assets of Stack, the RCAs are not Transaction Documents and cannot, therefore, reflect transactions contemplated by the APA.

Whether the RCAs are Transaction Documents, as defined in the APA, does not affect the outcome here.[34] The Forum Selection Clause does not refer to Transaction Documents at all; the phrase "transactions contemplated hereby" within the Forum Selection Clause stands alone. If the parties intended to confine the "transactions" referred to in the Forum Selection Clause by the definition of Transaction Documents, they would have included this term of art within that provision. That they did not is not surprising given that the RCAs themselves reflect they memorialize "transactions contemplated by" the APA, and the APA reflects

---

[34] The parties expended much energy in their briefs and at the hearing on the Motion arguing about whether the RCAs were in fact Transaction Documents and what that would imply regarding the indemnification obligations of various other parties to the APA. To be clear, nothing in this Opinion is intended to convey a view regarding the scope of the phrase "Transaction Documents" or the indemnification obligations under the APA. Those issues are not relevant here and will be addressed, if necessary, on another day.

that the parties anticipated entering into the RCAs as part of the acquisition of assets memorialized in the APA.[35]

## III.   CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Preliminary Injunction is GRANTED.  SPay shall submit a proposed form of implementing order on notice to Defendants within the next five (5) days.  The parties shall confer on next steps with respect to litigating the anti-suit injunction claim to final judgment and submit a proposed schedule or other recommendation within the next ten (10) days.

**IT IS SO ORDERED.**

Very truly yours,

*/s/ Joseph R. Slights III*

cc:   Sidney S. Liebesman, Esquire
      Courtney A. Emerson, Esquire
      Donna L. Culver, Esquire
      Derek C. Abbott, Esquire
      Geoffrey G. Grivner, Esquire
      Kody M. Sparks, Esquire

---

[35] APA § 9.2.