# IN THE COURT OF CHANCERY OF THE STATE OF DELAWARE

<table>
<tr><td>

RAMCO ASSET MANAGEMENT,<br>
LLC, US TRADING COMPANY<br>
METALS RE, LLC, and DINSHA<br>
DINSHA DYNASTY TRUST,<br>
<br>
     Plaintiffs,<br>
<br>
    v.<br>
<br>
USA RARE EARTH, LLC, MORZEV<br>
PTY LTD., MORDECHAI GUTNICK<br>
ATF THE MORZEV TRUST,<br>
MORDECHAI GUTNICK, and PINI<br>
ALTHAUS,<br>
<br>
    Defendants.

</td><td>

)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) C.A. No. 2022-0665-SG<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)

</td></tr>
</table>

## MEMORANDUM OPINION

Date Submitted: January 5, 2024
Date Decided: April 22, 2024

David A. Felice, BAILEY & GLASSER, LLP, Wilmington, Delaware; OF COUNSEL: Andrew St. Laurent, HARRIS ST. LAURENT & WECHSLER LLP, New York, New York, *Attorneys for Plaintiffs Ramco Asset Management, LLC, US Trading Company Metals Re, LLC, and the DinSha Dynasty Trust.*

John M. Seaman and E. Wade Houston, ABRAMS & BAYLISS LLP, Wilmington, Delaware; OF COUNSEL: Chelsea Corey, KING & SPALDING LLP, Charlotte, North Carolina, *Attorneys for Defendant USA Rare Earth, LLC.*

Carl D. Neff, PIERSON FERDINAND LLP, Wilmington, Delaware; OF COUNSEL: Aurora Cassirer and Christina H. Bost Seaton, FISHERBROYLES, LLP, New York, New York, *Attorneys for Defendant Pini Althaus.*

Karen E. Keller, Andrew E. Russell, and Nathan R. Hoeschen, SHAW KELLER LLP, Wilmington, Delaware; OF COUNSEL: Justin L. Ormand, ALLEN &

OVERY, New York, New York; Patrick W. Pearsall, ALLEN & OVERY, Washington, D.C., *Attorneys for Defendants Mordechai Gutnick ATF the Morzev Trust, Morzev Pty Ltd., and Mordechai Gutnick.*

**GLASSCOCK, Vice Chancellor**

The simplicity of the facts of this Memorandum Opinion is matched by its surprising legal complexity, arising in part from the large number of jurisdictions whose law does, or plausibly could, apply. Factually, Plaintiffs are former members of an Australian LLC, Morzev PTY Ltd., whose principals proposed reorganizing as a Delaware LLC, USARE, ostensibly to better participate in the U.S. capital markets. According to the Amended Complaint, the Plaintiffs were promised that if they consented to exchange their interests in Morzev for interests in USARE, they would be given the same ownership percentage in the latter as the former. Instead, their interests were diluted. Plaintiffs, accordingly, have stated a smorgasbord of claims;[1] what follows is a partial motion to dismiss in which the individual dishes are digested, under Rule 12(b)(6).

## I. BACKGROUND

*A. Factual Background*

1. The Parties

Plaintiff Ramco Asset Management, LLC ("Ramco") is a New Jersey limited liability company.[2] Ramco is a Member of USA Rare Earth, LLC ("USARE" or the "Company").[3]

---

[1] The most pertinent of these claims, perhaps, were against Morzev and its principal, and related entites—those claims await vindication, if at all, in another jurisdiction; in an earlier Memorandum Opinion in this matter, I found that this court lacked jurisdiction over those parties.

[2] Am. Verified Compl. for Breach of Contract and Breach of Fiduciary Duties ¶ 5, Dkt. No. 29 ("Am. Compl.").

[3] *Id.*

Plaintiff US Trading Company Metals RE, LLC ("US Trading Company") is a Delaware limited liability company, with its headquarters in New York.[4] US Trading Company is a Member of USARE.[5]

Plaintiff DinSha Dynasty Trust ("DinSha," and together with Ramco and US Trading Company, the "Plaintiffs") is a trust organized under the laws of New Jersey.[6] DinSha is a Member of USARE.[7]

Defendant USARE is a limited liability company organized under the laws of Delaware.[8]

Defendant Mordechai Gutnick is a Manager of USARE and is the largest current holder of USARE Class A shares through entities that he controls.[9] Gutnick is also a Member of USARE through Vested Incentive Units he holds.[10] Gutnick is a resident of the state of New York.[11]

Former defendant Morzev PTY Ltd. ("Morzev") is an Australian limited liability company.[12] Gutnick was a director of Morzev.[13]

---

[4] *Id.* ¶ 6.
[5] *Id.*
[6] *Id.* ¶ 7.
[7] *Id.*
[8] *Id.* ¶ 8.
[9] *Id.* ¶ 11.
[10] *Id.*
[11] *Id.*
[12] *Id.* ¶ 9.
[13] *Id.*

2

Former defendant the Mordechai Gutnick ATF the Morzev Trust (the "ATF Morzev Trust," and together with Gutnick and Morzev, the "Morzev Defendants") is a trust organized under the laws of Australia.[14]

Defendant Pini Althaus was the chief executive officer of USARE from 2019–2021 and is a former Manager of the Company.[15] Althaus is a Member of USARE through Vested Incentive Unites that he holds.[16] Althaus is a resident of New York.[17]

### 2. Plaintiffs Invest

Gutnick founded Morzev on March 6, 2015.[18] Morzev's primary asset was the option to acquire up to 80% of the Round Top heavy rare-earth and critical minerals project in Hudspeth County, Texas (the "Round Top Option").[19] Ramco invested in Morzev through the purchase of convertible notes;[20] DinSha and US Trading Company invested in Morzev by purchasing shares in the entity.[21]

### 3. Gutnick Transfers Morzev's Assets to USARE

In 2019, Gutnick decided to transfer the assets and liabilities of Morzev to a U.S.-based entity to increase the availability of U.S.-based capital to exploit

---

[14] *Id.* ¶ 10.
[15] *Id.* ¶ 12.
[16] *Id.*
[17] *Id.*
[18] *Id.* ¶ 18.
[19] *Id.*
[20] *Id.* ¶ 19.
[21] *Id.* ¶¶ 20–21.

Morzev's primary asset, the Round Top Option.[22]  On May 6, 2019, Althaus formed

USARE as a Delaware limited liability company.[23]  Gutnick then transferred the

Round Top Option on August 23, 2019, when USARE entered into the Amended

and Restated Round Top Option Agreement.[24]  Under the Amended and Restated

Round Top Option Agreement, USARE was given the rights to the Round Top

Option on the same terms as Morzev to acquire interests in the Round Top heavy

rare-earth and critical minerals project.[25]

### 4. Plaintiffs Transfer Their Interests from Morzev to USARE

From March to May 2019, Gutnick spoke with Stewart Kleiner, Ramco's

principal and DinSha's grantor, regarding the potential for Ramco and DinSha to

transfer their interests in Morzev to the new U.S.-based entity, USARE.[26]  Gutnick

had similar conversations with Steven Rosenfeld, the principal of US Trading

Company.[27]

### a. The 2019 Memo

Kleiner memorialized his understanding of his conversations with Gutnick in

a writing he sent to Gutnick in May 2019 (the "2019 Memo").[28]  Before turning to

---

[22] *Id.* ¶ 22.
[23] *Id.* ¶ 23.
[24] *Id.* ¶ 25.
[25] *Id.*
[26] *Id.* ¶ 28.
[27] *Id.* ¶ 29.
[28] *Id.* ¶ 31.

the substance of the conversations, Kleiner wrote that "[u]ntil more formal documentation should occur, if at all, [the 2019 Memo] shall serve as our Understanding and Agreement Re [sic] the Following."[29] The 2019 Memo, as drafted by Kleiner, stated that Ramco owned 14.29% interest in Morzev, or 20,7777,000 shares.[30] With respect to DinSha, the 2019 Memo stated DinSha owned 2.143% interest in Morzev.[31] In explaining how the Morzev interests would be transferred to USARE, the 2019 Memo states that USARE would deliver Ramco and DinSha's shares in USARE "within two weeks' time" after those shares in "Morzev Pty Ltd, the Australian company" were "translated / transcribed / transferred into valid U.S. shares . . . of Morzev LLC / d.b.a. USA Rare Earth, the United States of America company."[32] The 2019 Memo concluded by stating: "Assuming the above is in accordance with our understanding Please [sic] make two copies of this agreement, sign both of them and overnight them both to me."[33]

Gutnick returned a copy of the 2019 Memo to Kleiner that included several handwritten edits.[34] Specifically, Gutnick wrote by Ramco's asserted 14.29%

---

[29] Am. Compl., Ex. B, Dkt. No. 29 (the "2019 Memo").
[30] Am. Compl. ¶ 35 (citing 2019 Memo).
[31] *Id.* ¶ 44, (citing the 2019 Memo).
[32] 2019 Memo at 1.
[33] *Id.* at 2.
[34] *See id.* While the Amended Complaint alleges that the 2019 Memo is an agreement that includes specific percentages of equity interest in USARE to be issued to Ramco and DinSha, the incorporation by references doctrine allows the Court to review the documents relied upon in the complaint to ensure that the statements are accurately represented. *See Lebanon Cnty. Emps.' Ret. Fund v. Collis*, 287 A.3d 1160, 1181 (Del. Ch. 2022). Accordingly, I have reviewed the 2019

5

interest and DinSha's asserted 2.143% interest in Morzev that he was "not sure exact percentages."[35]  Gutnick also edited the timing of when the USARE certificates would be delivered to DinSha by scratching through "within" and penciling in "approximately 2 weeks."[36]  While the 2019 Memo defined "Morzev" as "Morzev Pty Ltd / Morzev LLC / d.b.a. USA Rare Earth," Gutnick wrote above his signature that he was signing on behalf of "Morzev Pty Ltd."[37]

### b. Plaintiffs' Respective Conversion Agreements

Months later, the parties entered into agreements under which each plaintiff's interest in Morzev were to convert to interests in USARE.  On July 29, 2019, USARE, Morzev, and Ramco signed an agreement (the "Ramco Conversion Agreement") whereby USARE agreed to adopt and endorse the term sheets for the convertible notes that Ramco had entered into with Morzev.[38]  Under the Ramco Conversion Agreement, Ramco agreed to convert its convertible notes in Morzev into 21,123,677 shares of USARE.[39]  The Ramco Conversion Agreement provides that "[t]his Letter is governed by the laws in force from time to time in New Jersey, USA."[40]

---

Memo and find it is necessary to include this paragraph of facts in my opinion to accurately represent the contents of the 2019 Memo.
[35] *See* 2019 Memo at 1.
[36] *Id.*
[37] *Id.* at 2.
[38] Am. Compl. ¶ 36.
[39] *Id.*
[40] Am. Compl., Ex. C at 2, Dkt. No. 29 (the "Ramco Conversion Agreement").

6

DinSha entered into a similar agreement with Morzev to transfer DinSha's shares in Morzev to shares in USARE on July 25, 2019 (the "DinSha Conversion Agreement").[41] Under the terms of the DinSha Conversion Agreement, the parties thereto agreed that, in exchange for transferring its' Morzev shares, DinSha was to "be issued fully paid ordinary shares in the capital of [USARE] on a one for one (1:1) basis."[42] While the DinSha Conversion Agreement specifies that DinSha "currently holds 3,116,608 [s]hares" in Morzev,[43] DinSha acquired more shares in Morzev and held 3,562,898 shares when it entered into the DinSha Conversion Agreement.[44] The DinSha Conversion Agreement provides that "[t]his Letter is governed by the laws in force from time to time in Western Australia."[45]

On July 22, 2019, US Trading Company executed the agreement under which it would transfer its Morzev interest (the "US Trading Company Conversion Agreement").[46] Under the terms of the US Trading Company Conversion Agreement, US Trading Company agreed to transfer its shares of Morzev in exchange for "fully paid ordinary shares in the Capital of [USARE] on a one for one (1:1) basis."[47] The US Trading Company Conversion Agreement provided that, as

---

[41] Am. Compl. ¶ 45.
[42] *Id.* ¶ 36 (quoting Am. Compl., Ex. D at 1, Dkt. No. 29 (the "DinSha Conversion Agreement")).
[43] DinSha Conversion Agreement at 1.
[44] Am. Compl. ¶ 47.
[45] DinSha Conversion Agreement at 2.
[46] Am. Compl. ¶ 48.
[47] *Id.* ¶ 49 (quoting Am. Compl., Ex. E at 1, Dkt. No. 29 (the "US Trading Company Conversion Agreement")).

of the date of the agreement, US Trading Company held 23,178,571 shares in Morzev.[48]

*B. Procedural History*

Plaintiffs initiated this action on July 29, 2022.[49]    On November 4, 2023, Plaintiffs filed the operative complaint in this action (the "Amended Complaint").[50] The Amended Complaint asserted fourteen causes of action against five defendants.[51]   On October 20, 2023, I issued a memorandum opinion addressing whether this Court has personal jurisdiction over certain defendants.[52]  In *Ramco I*, I dismissed all counts brought against Morzev and ATF Morzev Trust because this Court lacks personal jurisdiction over those defendants.[53]  Similarly, with respect to Gutnick, I dismissed Counts I–VI and IX–XIV for lack of personal jurisdiction.[54] However, I denied Althaus's motion for dismissal for lack of personal jurisdiction.[55] As a result of the holding in *Ramco I*, I cannot adjudicate Plaintiffs' claims asserted solely against the Morzev Defendants.   Those claims are Count III for breach of the DinSha Conversion Agreement; Count IV for breach of the implied covenant

---

[48] US Trading Company Conversion Agreement at 1.
[49] *See* Verified Compl. for Breach of Contract and Breach of Fiduciary Duties, Dkt. No. 1.
[50] *See* Am. Compl.
[51] *See id.* ¶¶ 61–158.
[52] *See Ramco Asset Mgmt., LLC v. USA Rare Earth, LLC*, 2023 WL 6939263 (Del. Ch. Oct. 20, 2023) ("*Ramco I*").
[53] *Id.* at *7.
[54] *Id.*
[55] *Id.* at *4.

inhering in the DinSha Conversion Agreement; Count V for breach of the US Trading Company Conversion Agreement; and Count VI for breach of the implied covenant inhering in the US Trading Company Conversion Agreement.[56]

*Ramco I* did not address Gutnick and Althaus's motions to dismiss on *forum non conveniens* grounds and all defendants' motion to dismiss under Rule 12(b)(6).[57] On November 15, 2023, Gutnick and Althaus informed the Court that the issue of *forum non conveniens* did not need to be reached at this time.[58] The parties submitted supplemental filings, as requested by the Court, regarding choice of law issues inhering in Counts IX–XII on January 5, 2024.[59] I consider the motions to dismiss fully submitted as of that date.

## II. ANALYSIS

Before me currently are motions brought by USARE, Althaus, and Gutnick to dismiss the remaining counts of the Amended Complaint under Rule 12(b)(6). The remaining counts are as follows: Count I for breach of contract against USARE based on the 2019 Memo and the Ramco Conversion Agreement; Count II for breach of the implied covenant inhering in the 2019 Memo and the Ramco Conversion Agreement against USARE; Count VII for breach of fiduciary duty against Althaus

---

[56] Am. Compl. ¶¶ 70–88.

[57] *Ramco I*, 2023 WL 6939263, at *7.

[58] *See* Joint Letter to Hon. Sam Glasscock III from Counsel re questions posed in the Ct.'s Oct. 20, 2023 mem. op. at 1, Dkt. No. 61.

[59] *See* Letter to the Hon. Sam Glasscock III on behalf of Def. USARE Re: Choice of Law, Dkt. No. 65; Pls.' Suppl. Mem. on Choice of Law Question, Dkt. No. 66 ("Pls.' Suppl. Mem.").

and Gutnick; Count VIII for breach of the implied covenant inhering in USARE's LLC operating agreement (the "LLC Agreement") against Althaus and Gutnick; Count IX for negligent misrepresentation against USARE brought by Ramco; Count X for fraud against USARE for inducing Ramco to transfer its interests; Count XI for negligent misrepresentation against USARE brought by DinSha; and Count XII for fraud against USARE for inducing DinSha to transfer its interests.[60]

Plaintiffs' claims are governed by the laws of at least two jurisdictions: Counts VII and VIII are governed by Delaware law as they relate to a Delaware limited liability company while Counts I and II are governed by New Jersey law to the extent that those counts rely upon the Ramco Conversion Agreement, which contains a New Jersey choice-of-law provision. The parties dispute which jurisdiction's laws apply to the remaining tort claims, with Plaintiffs advocating for the application of New Jersey law to at least Counts IX and X and Western Australian law to Counts XI and XII while USARE seeks application of Delaware law to all tort claims. Below, I analyze the various claims, making choice of law decisions only as necessary.

### A. Standard of Review

The standard of review for a motion to dismiss under Court of Chancery Rule 12(b)(6) is well established:

---

[60] Am. Compl. ¶¶ 61–69, 89–139.

10

(i) all well-pleaded factual allegations are accepted as true; (ii) even vague allegations are "well-pleaded" if they give the opposing party notice of the claim; (iii) the Court must draw all reasonable inferences in favor of the non-moving party; and (iv) dismissal is inappropriate unless the plaintiff would not be entitled to recover under any reasonably conceivable set of circumstances susceptible of proof.[61]

"A trial court is not, however, required to accept as true conclusory allegations without specific supporting factual allegations."[62] "Moreover, a claim may be dismissed if allegations in the complaint or in the exhibits incorporated into the complaint effectively negate the claim as a matter of law."[63]

### B. Counts I–II: The Contract Claims

#### 1. Count I for Breach of Contract

Plaintiffs allege that USARE breached the parties' contractual agreement to transfer Ramco's interest from Morzev to USARE without diminution, as reflected in the 2019 Memo and the Ramco Conversion Agreement, because USARE provided Ramco with an interest that was materially less than Ramco's interest in Morzev.[64] USARE contends that Count I fails to state a claim because (i) the Ramco Conversion Agreement is a fully-integrated contract that does not guarantee Ramco a specific percentage ownership in USARE following the conversion—instead, it provides for a specific number of units, which Ramco received; and (ii) the Ramco

---

[61] *Savor, Inc. v. FMR Corp.*, 812 A.2d 894, 896–97 (Del. 2002) (internal quotations omitted).
[62] *In re Gen. Motors (Hughes) S'holder Litig.*, 897 A.2d 162, 168 (Del. 2006) (internal quotations omitted).
[63] *Malpiede v. Townson*, 780 A.2d 1075, 1083 (Del. 2001).
[64] Am. Compl. ¶¶ 62, 64.

11

Conversion Agreement is clear and unambiguous, so the Court should not consider the 2019 Memo to modify the express terms of the Ramco Conversion Agreement.[65] Plaintiffs, however, aver that the Ramco Conversion Agreement must be read together with the 2019 Memo and construed as one contract.[66] Plaintiffs invoke New Jersey's expansive approach to the parol evidence rule to urge the Court to consider the 2019 Memo to interpret the meaning of the Ramco Conversion Agreement.[67] The Ramco Conversion Agreement contains a choice-of-law provision that states, "[t]his Letter is governed by the laws in force from time to time in New Jersey, USA."[68] Both parties agree that Count I is subject to this choice-of-law provision.

Under New Jersey law, to state a claim for breach of contract, Plaintiffs must allege four elements: (i) "that the parties entered into a contract containing certain terms;" (ii) "plaintiffs did what the contract required them to do;" (iii) "defendants did not do what the contract required them to do;" and (iv) "defendant's breach, or failure to do what the contract required, caused a loss to the plaintiffs."[69] A contract is fully integrated "[w]here the parties reduce an agreement to a writing which in view of its completeness and specificity reasonably appears to be a complete agreement . . . *unless it is established by other evidence* that the writing did not

---

[65] Def. USA Rare Earth, LLC's Opening Br. Supp. Mot. Dismiss Am. Compl. 22–27, Dkt. No. 34 ("USARE's OB").

[66] [Corrected] Pls.' Answering Br. Opp'n Defs.' Mots. to Dismiss 25–26, Dkt. No. 39 ("Pls.' AB").

[67] *Id.* at 27–28

[68] Ramco Conversion Agreement at 2.

[69] *Goldfarb v. Solimine*, 245 A.3d 570, 577 (N.J. 2021) (citation omitted).

12

constitute a final expression."[70] The Court may consider extrinsic evidence to interpret an agreement, "even when the contract on its face is free from ambiguity."[71] "Such evidence is adducible only for the purpose of interpreting the writing—not for the purpose of modifying or enlarging or curtailing its terms, but to aid in determining the meaning of what has been said."[72] Once the Court has ascertained the true meaning of the contractual terms, "the parol evidence rule comes into play to prohibit the introduction of extrinsic evidence to vary the terms of the contract."[73]

USARE contends that the Ramco Conversion Agreement is a fully integrated contract. Plaintiffs have not alleged that the Ramco Conversion Agreement does not constitute a *final* expression of the parties' agreement. Rather, Plaintiffs ask this Court to read the 2019 Memo and the Ramco Conversion Agreement as one contract. The Ramco Conversion Agreement provided that Ramco would receive 21,123,677 shares in USARE. Plaintiffs contend that, when read together, the 2019 Memo allows the Court to interpret the terms of the Ramco Conversion Agreement such that the 21,123,677 shares in USARE provided to Ramco should be interpreted as equaling the 14.29% equity interest in USARE that Ramco requested in the 2019 Memo.[74]

---

[70] *Chance v. McCann*, 966 A.2d 29, 41 n.6 (N.J. Super. Ct. App. Div. 2009) (emphasis added) (citation omitted).
[71] *Atl. N. Airlines v. Schwimmer*, 96 A.2d 652, 656 (N.J. 1953).
[72] *Id.*
[73] *Conway v. 287 Corp. Ctr. Assocs.*, 901 A.2d 341, 347 (N.J. 2006).
[74] Pls.' AB 27–28.

13

Despite USARE's arguments that the 2019 Memo itself is not a valid contract and that Gutnick lacked the authority to sign it on behalf of USARE, under New Jersey law, I consider the circumstances surrounding the execution of the Ramco Conversion Agreement by considering extrinsic evidence, such as the 2019 Memo. When read together, the inclusion of the exact percentages in the 2019 Memo provides insight into what the parties intended the 21,123,677 shares in USARE to represent. It is unclear from the Ramco Conversion Agreement alone what the absolute number of shares included therein was intended to represent as the Ramco Conversion Agreement does not state the total number of shares of USARE that would be outstanding. As Plaintiffs posit, it is plausible at this stage to infer that the parties intended the 21,123,677 shares of USARE to represent an equity interest in USARE equivalent to what Plaintiffs previously held in Morzev. Because Plaintiffs' purpose in asking this Court to consider the 2019 Memo is to assist the Court in ascertaining the true meaning of contractual terms in the Ramco Conversion Agreement, the parol evidence rule does not exclude the 2019 Memo under the law of New Jersey, as I understand it.

While Plaintiffs do not contend that USARE failed to deliver the exact number of shares required under the Ramco Conversion Agreement, Plaintiffs have stated a claim for breach of contract because USARE failed to maintain Ramco's equity interest when converting Ramco's shares from Morzev. It is reasonably conceivable

14

that such was the bargain of the parties. Therefore, USARE's motion to dismiss Count I is denied.

### 2. Count II for Breach of the Implied Covenant of Good Faith and Fair Dealing that Inhered in the Ramco Conversion Agreement

Plaintiffs also assert a breach of the implied covenant of good faith and fair dealing against USARE for its failure to abide by the inherent obligations set forth in the 2019 Memo and the Ramco Conversion Agreement.[75] Specifically, Plaintiffs allege that USARE was impliedly required to affect a 1:1 transfer of Ramco's equity interest from Morzev to USARE without change or diminution, which USARE failed to do.[76] USARE seeks dismissal of Count II on the grounds that (i) it is duplicative of Count I; (ii) there is no such thing as an obligation by implication when the terms of an agreement are unambiguous; and (iii) this Court cannot invoke the implied covenant to correct Plaintiffs' mistake regarding the terms of the Ramco Conversion Agreement.[77] Both parties agree that, because Plaintiffs seek to invoke the implied covenant with respect to the Ramco Conversion Agreement, New Jersey law applies to Count II.

New Jersey recognizes that "[i]n every contract there is an implied covenant that neither party shall do anything which will have the effect of destroying or

---

[75] *Id.* at 32.
[76] *Id.*
[77] Def. USA Rare Earth LLC's Reply Br. Supp. Mot. Dismiss Am. Compl. 9–12, Dkt. No. 40.

injuring the right of the other party to receive the fruits of the contract[.]"[78]  The

implied covenant of good faith and fair dealing is breached when a party that has

discretion under a contract "exercises its discretionary authority arbitrarily,

unreasonably, or capriciously, with the objective of preventing the other party from

receiving its reasonably expected fruits under the contract."[79]  Courts in New Jersey

view the implied covenant liberally; they apply the covenant in three ways: (1) to

"permit[] the inclusion of terms and conditions which have not been set forth in the

written contract . . . . The covenant acts in such instances to include terms the parties

must have intended because they are necessary to give business efficacy to the

contract;" (2) "to allow redress for the bad faith performance of an agreement even

when the defendant has not breached any express term;" and (3) "to permit inquiry

into a party's exercise of discretion expressly granted by a contract's terms."[80]

Plaintiffs assert that the spirit of the 2019 Memo and Ramco Conversion

Agreements required USARE to transfer the Ramco's interest in Morzev to USARE

without change or diminution.[81]  As I have already found above in Section II.B.1,

the Ramco Conversion Agreement, when read in conjunction with the 2019 Memo,

is an ambiguous contract.  Therefore, the implied covenant may be invoked under

---

[78] *Wilson v. Amerada Hess Corp.*, 773 A.2d 1121, 1126 (N.J. 2001) (citation omitted).
[79] *Id.* at 1130.
[80] *Seidenberg v. Summit Bank*, 791 A.2d 1068, 1076 (N.J. Super. Ct. App. Div. 2002) (citations and internal quotations omitted).
[81] Pls.' AB 34.

16

New Jersey law to read into the Ramco Conversion Agreement terms that the parties must have intended to give the contract meaning or to ensure that Ramco was not denied the benefit of its bargain. Here, Plaintiffs have sufficiently stated that the 21,123,677 shares of USARE promised to Ramco in the Ramco Conversion Agreement were intended by the parties to represent an equivalent interest in USARE that Ramco previously held in Morzev. Therefore, under the law of New Jersey and at this stage of the proceedings, Plaintiffs have sufficiently pled that the Ramco Conversion Agreement lacks business efficacy because it lacks terms explaining what the 21,123,677 shares in USARE represents, or has been performed so as to deny Plaintiffs the benefit of their bargain. Accordingly, USARE's motion to dismiss Count II is denied.

### C. Counts IX–XII: The Tort Actions

Plaintiffs assert two claims for fraud: Count X pertains to the Ramco Conversion Agreement, which contains a New Jersey choice of law provision, and Count XII pertains to the DinSha Conversion Agreement, which contains a Western Australia choice of law provision. Plaintiffs also state two claims for negligent misrepresentation: Count IX pertains to the Ramco Conversion Agreement and Count XI pertains to the DinSha Conversion Agreement. Undergirding these four tort claims, Plaintiffs allege that USARE knowingly made false representations to Plaintiffs regarding their post-conversion interest in USARE and Plaintiffs relied on

17

those false representations when agreeing to execute their respective conversion agreements.[82]

The tort claims are an awkward fit, brought against USARE, as will become apparent. Originally, the claims were brought against Gutnick and Morzev as well—these claims may still be pursued against those defendants, but not here—as I have found, this Court lacks in personam jurisdiction over those parties.[83]

USARE mounts six arguments in favor of dismissing these claims: (1) Plaintiffs signed the unambiguous conversion agreements that did not guarantee either an exact percentage equity holding in USARE; (2) Counts IX and XI are duplicative of the breach of contract claim; (3) USARE did not make the challenged representations; (4) the 2019 Memo did not represent that Plaintiffs would receive exactly the same percentage interest in USARE as they previously held in Morzev; (5) promissory statements cannot support claims for negligent misrepresentation; and (6) Plaintiffs have otherwise failed to pled the fraud claims with the specificity required under Court of Chancery Rule 9(b).[84]

Plaintiffs assert that these tort claims arise from the Ramco Conversion Agreement and DinSha Conversion Agreement such that the choice-of-law provisions (favoring application of Western Australian and New Jersey laws) in

---

[82] *See id.* at 53.
[83] *See Ramco I*, 2023 WL 6939263, at *7.
[84] USARE's OB 29–31.

those contracts apply to the tort claims.[85]   In the alternative, Plaintiffs assert that New Jersey law applies to all tort claims because New Jersey has the most significant relationship to these claims.[86]   With respect to choice-of-law, USARE notes that the choice-of-law provisions in the Ramco Conversion Agreement and DinSha Conversion Agreement are narrow, limited only to disputes arising out of the agreements themselves.[87]   USARE also notes that it is not a party nor signatory to the DinSha Conversion Agreement, so USARE is not bound to that agreement's choice-of-law provision.[88]

"Where the parties agreed to the application of a state's law in their contract, Delaware courts are 'strongly inclined' to respect the parties' freedom of contract and enforce the contract provision[.]"[89]   With respect to tort claims that relate to a contract, the Court must determine whether the scope of the choice-of-law provision is broad enough to encompass those claims arising from the parties' contractual relationship.[90]   The question turns on the intent of the parties.

---

[85] Pls.' Suppl. Mem. 2, 5–6.

[86] *Id.* at 7–11.

[87] Letter to the Hon. Sam Glasscock III from E. Wade Houston, Esq. on Behalf of Def. USARE 1, Dkt. No. 65.

[88] *Id.* at 1–2.

[89] *Travelers Cas. and Sur. Co. of Am. v. Blackbaud, Inc.*, 2024 WL 1298762, at *7 (Del. Super. Mar. 27, 2024) (quoting *Wind Point P'rs VII-A, L.P. v. Insight Equity A.P. X Co., LLC*, 2020 WL 5054791, at *18 (Del. Super. Aug. 17, 2020)).

[90] *See Gloucester Hldg. Corp. v. U.S. Tape and Sticky Prods., LLC*, 832 A.2d 116, 124 (Del. Ch. 2003) ("There are certain circumstances where courts have held that a broad choice of law clause in a contract could encompass tort claims that relate to contract formation.").

The choice-of-law provision in the Ramco Conversion Agreement provides that "*[t]his Letter* is governed by the laws in force from time to time in New Jersey, USA."[91] Likewise, the DinSha Conversion Agreement provides that "*[t]his Letter* is governed by the laws in force from time to time in Western Australia."[92] The plain language of these provisions is not broad enough to encompass tort claims relating to the formation of those contracts. These provisions do not contain language that expands the application thereof beyond contract claims; they do not purpose "to cover litigation that *arises out of or relates to* the" agreements.[93]

Since the choice-of-law provisions are not broad enough to encompass Plaintiffs' tort claims, the normal next step would be to conduct a choice-of-law analysis to determine which jurisdiction's laws apply to these claims. Where parties

---

[91] Ramco Conversion Agreement at 2 (emphasis added).

[92] DinSha Conversion Agreement at 2 (emphasis added).

[93] *Gloucester Hldg. Corp.*, 832 A.2d at 124. Plaintiffs rely on two cases to advocate for a broad reading of these provisions, namely *Weil v. Morgan Stanley DW Inc.*, 877 A.2d 1024 (Del. Ch. 2005), and *Abry Partners V, L.P. v. F&W Acquisition LLC*, 891 A.2d 1032 (Del. Ch. 2006). Pls. Suppl. Mem. 5–7. Neither case is persuasive because neither dealt with the application of a choice-of-law provision to tort claims arising from the contract's formation. The choice-of-law provision in *Weil* explicitly stated that the contract was entered "in the State of California and shall be construed, and the rights and liabilities of the parties determined, in accordance with the laws of the State of California." 877 A.2d at 1032. The Court determined that the scope of this provision was broad enough to conclude that Morgan Stanley was a fiduciary who owed duties to its customers because the fiduciary relationship arose from the contract containing the California choice-of-law provision. *Id.* at 1032–35. In *Arby Partners*, the choice-of-law provision provided that the agreement was to "be governed by, and construed in accordance with, the Laws of the State of Delaware, regardless of the laws that might otherwise govern under applicable principles of conflicts of law." 891 A.2d at 1046. The Court determined that the choice-of-law provision was applicable where a party was attempting to avoid the contract by challenging the enforceability of the contract that contained the provision. *Id.* at 1048–50.

dispute which jurisdiction's law applies, Delaware courts use a two-part test to determine which states' laws apply: "first, the court determines whether there is an actual conflict of law between the proposed jurisdictions. If there is a conflict, the court determines which jurisdiction has the 'most significant relationship to the occurrence and the parties[.]'"[94] Where the laws do not conflict, "the Court should avoid the choice-of-law analysis altogether."[95]

However, before I reach a choice-of-law analysis, there is a predicate analysis, that is, whether Plaintiffs' have met the procedural hurdle to adequately plead these tort claims that arise from averments of fraud. I find this analysis is dispositive. "As a general rule, the law of the forum governs procedural matters."[96] Thus I must determine whether Plaintiffs have met the heightened pleading standards under Court of Chancery Rule 9(b).[97] Under Rule 9(b), "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and other condition of mind of a person may be averred generally."[98] "Delaware courts routinely apply the more stringent Rule 9(b) standard to negligent misrepresentation claims, as a negligent

---

[94] *Bell Helicopter Textron, Inc. v. Arteaga*, 113 A.3d 1045, 1050 (Del. 2015).
[95] *Deuley v. DynCorp Int'l, Inc.*, 8 A.3d 1156, 1161 (Del. 2010).
[96] *Chaplake Hldgs., LTD v. Chrysler Corp.*, 766 A.2d 1, 5 (Del. 2001) (citations omitted).
[97] *See inVentiv Health Clinical, LLC v. Odonate Therapeutics, Inc.*, 2021 WL 252823, at *7 (Del. Super. Jan. 26, 2021) (explaining that while another jurisdiction's substantive law governed the matter, fraud claims must still meet the heightened pleading standards under Delaware rules of civil procedure).
[98] Ct. Ch. R. 9(b).

21

misrepresentation claim must be stated with the same particularity required for fraud."[99]  To satisfy Rule 9(b), a plaintiff "must allege: (1) the time, place, and contents of the false representation; (2) the identity of the person making the representation; and (3) what the person intended to gain by making the representations."[100]

Plaintiffs generally allege that Kleiner, the principal of Ramco and grantor of DinSha, had "numerous" conversations with Gutnick by phone and in-person "in approximately March, April, and May 2019."[101]  Gutnick "specifically" told Kleiner "in sum and substance" that Plaintiffs would have exactly what they had in Morzev in the new entity and that Plaintiffs would get exactly what they were owed.[102]  In further support of their fraud allegations, Plaintiffs point to the 2019 Memo, which was drafted by Plaintiffs, to argue that Gutnick represented to Plaintiffs they would receive the exact percentages in USARE as sought by Plaintiffs, despite Gutnick's handwritten notes indicating those percentages were not yet finalized.[103]  These pleadings, when read as a whole, do not meet the heightened pleading standards of Rule 9(b).  Plaintiffs fail to plead the time when or place where these representations occurred; what representations are attributable to USARE; and do not allege what

---

[99] *Otto Candies, LLC v. KPMG LLP*, 2019 WL 994050, at *4 (Del. Ch. Feb. 28, 2019) (collecting cases) (alterations, citations, and internal quotations omitted).
[100] *Arby P'rs V, L.P.*, 891 A.2d at 1050.
[101] Am. Compl. ¶ 28.
[102] *Id.*
[103] *See id.* ¶¶ 35–37, 44–46.

22

USARE intended to gain from these representations. USARE was not even formed until May 6, 2019, and the Amended Complaint, therefore, does not state with specificity that the false statements could have been made on behalf of USARE. In other words, USARE is not put in a position to defend against these fraud and negligent misrepresentation claims. Therefore, Counts IX–XII are dismissed for failure to satisfy the heightened pleading required under Rule 9(b). Accordingly, I need not reach USARE's other arguments about the insufficiency of the fraud and negligent misrepresentation claims.

### D. Counts VII–VIII: The Delaware LLC Counts

#### 1. Count VII for Breach of Fiduciary Duty

USARE's Operating Agreement unambiguously disclaims common-law fiduciary duties. Plaintiffs allege, however, that Althaus and Gutnick (the "Individual Defendants") breached fiduciary duties owed to Plaintiffs from July 2019, when Plaintiffs executed their respective conversion agreements, through August 26, 2019, the day before USARE's first operating agreement, which disclaimed such fiduciary duties, was executed.[104] Specifically, Plaintiffs assert that the Individual Defendants were duty-bound to ensure that Plaintiffs' "first day" equity percentages in USARE were exactly the same as Plaintiffs' "last day" equity

---

[104] Pls.' AB 42. Plaintiffs refer to this time as the "Fiduciary Period." *Id.* at 44.

23

percentages in Morzev.[105]  Instead, the Individual Defendants actively took steps to diminish Plaintiffs' investments during the conversion to USARE, without disclosing that diminution to Plaintiffs.[106]  The Individual Defendants contend that Plaintiffs fail to state a claim because (1) the LLC Agreement that disclaimed fiduciary duties was effective in July 2019, so there is no period where the Individual Defendants owed Plaintiffs such duties and (2) Plaintiffs lack standing to bring this claim because it is derivative in nature.[107]

To state a claim for breach of fiduciary duty, a plaintiff must allege (1) the existence of a fiduciary duty and (2) a breach of that duty by the defendant.[108]  The Court determines whether a claim for breach of fiduciary duty is direct or derivative by considering "(1) who suffered the alleged harm (the corporation or the stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders, individually)[.]"[109]  If the breach of fiduciary duty claim is derivative in nature, the plaintiff must plead that

---

[105] *Id.* at 42.

[106] *Id.* at 42–43.

[107] Opening Br. of Def. Pini Althaus Supp. Mot. Dismiss Am. Compl. 16–20, Dkt. No. 33 ("Althaus' OB"); Opening Br. of Defs. Morzev Pty Ltd., Mordechai Gutnick ATF the Morzev Trust, and Mordechai Gutnick Supp. Mot. Dismiss Pls.' Am. Verified Compl. 19–22, Dkt. No. 32 ("Gutnick's OB").  Althaus also advocates for dismissal on the grounds that the actions occurred prior to Plaintiffs obtaining their equity interest in USARE and that Count VII is duplicative of Count II.  Althaus' OB 20–21.

[108] *Beard Rsch., Inc. v. Kates*, 8 A.3d 573, 601 (Del. Ch. 2010).

[109] *Tooely v. Donaldson, Lufkin & Jennette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004).

24

(1) a demand was made on the entity or (2) reasons why making such demand on the entity would be futile.[110]

To the extent that the Plaintiffs allege that only they were diluted compared with their holdings in Morzev,[111] that does not state a *fiduciary duty* claim on the part of the Defendants. If USARE's managers had a duty to distribute units to Plaintiffs, that duty arises in contract. Absent some contractual duty, the Individual Defendant managers were not obliged to distribute any particular number of USARE shares, as fiduciaries.

To the extent that Plaintiffs rely upon their respective conversion agreements to assert this breach of fiduciary duty claim directly, the breach of fiduciary duty claim is improper bootstrapping. "[T]he general rule under Delaware law . . . is that a plaintiff may not 'bootstrap' a breach of fiduciary duty claim [from] a breach of contract claim merely by restating the breach of contract claim as a breach of fiduciary duty."[112] Plaintiffs here seek to enforce contractual obligations. "It is a well-settled principle that where a dispute arises from obligations that are expressly addressed by contract, that dispute will be treated as a breach of contract claim."[113]

---

[110] Ct. Ch. R. 23.1(a)(1); *see also United Food and Com. Workers Union v. Zuckerberg*, 250 A.3d 862, 877 (Del. Ch. 2020).

[111] To the extent Plaintiffs are claiming a fiduciary breach by issuance of USARE units without value generally, the action would be derivative, and, given lack of compliance by Plaintiffs with Rule 23.1, would be dismissed under that rationale.

[112] *Grunstein v. Silva*, 2009 WL 4698541, at *6 (Del. Ch. Dec. 8, 2009).

[113] *Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).

25

I have already concluded above in Section II.B.1 that Ramco has stated a claim for breach of contract under New Jersey law. DinSha and US Trading Company both have their own respective agreements governing the conversion of their Morzev interests to USARE. Accordingly, any claim related to the Individual Defendants' purported failure to properly convert DinSha and US Trading Company's shares without diminution would be governed by their respective contracts and is not properly brought as a breach of fiduciary duty claim. Count VII is dismissed.[114]

### 2. Count VIII for Breach of the Implied Covenant of Good Faith and Fair Dealing that Inhered in the USARE LLC Agreement

In Count VIII, Plaintiffs allege that the Individual Defendants breached the implied covenant of the duty of good faith and fair dealing inhering in USARE's LLC Agreement.[115] Specifically, as members, managers, and/or majority owner of USARE, the Individual Defendants were duty-bound to ensure that Plaintiffs received a 1:1 equity interest in USARE, without diminution.[116] The Individual Defendants' duties arise under the original and third amended and restated USARE Company Agreements that provide that managers of USARE have contractual obligations to act in accordance with the implied covenant.[117] In response, the

---

[114] Because Count VII is dismissed for the reasons above, I decline to reach the fact-intensive issue of when USARE adopted the operating agreement that disclaimed fiduciary duties and whether there exists a so-called "Fiduciary Period," as Plaintiffs advocate. *See* Pls.' AB 44–46; Am. Compl. ¶¶ 52–59, 91.

[115] Am. Compl. ¶ 101.

[116] *Id.* ¶¶ 96–99.

[117] Pls.' AB 38.

Individual Defendants argue that Count VIII should be dismissed because Plaintiffs have failed to allege that any contractual gaps existed in the LLC Agreement.[118]

"The implied covenant is inherent in all contracts and is used to infer contract terms 'to handle developments or contractual gaps that the asserting party pleads neither party anticipated.'"[119] The purpose of the implied covenant is to "ensure[] that parties do not frustrate the fruits of the bargain by acting arbitrarily or unreasonably."[120] Delaware courts do not use the implied covenant "as a backstop to imply terms that parties failed to include but which could easily have been drafted."[121] To plead a claim for the breach of the implied covenant, "the plaintiff must allege a specific implied contractual obligation, a breach of that obligation by the defendant, and resulting damage to the plaintiff."[122] The implied covenant, however, "cannot be used . . . to create a free-floating duty unattached to the underlying legal documents."[123]

Plaintiffs failed to sufficiently plead a claim for a breach of the implied covenant that inheres in USARE's LLC Agreement. While Plaintiffs insist that the Individual Defendants had implied duties to ensure that Plaintiffs received a 1:1

---

[118] Althaus' OB 23–25; Gutnick's OB 22–23.

[119] *Dieckman v. Regency GP LP*, 155 A.3d 358, 367 (Del. 2017) (quoting *Nemec*, 991 A.2d at 1125).

[120] *Baldwin v. New Wood Res. LLC*, 283 A.3d 1099, 1116 (Del. 2022) (internal quotations omitted).

[121] *Id.* at 1117.

[122] *Cantor Fitzgerald, L.P. v. Cantor*, 1998 WL 842316, at *1 (Del. Ch. Nov. 10, 1998).

[123] *Lonergan v. EPE Hldgs., LLC*, 5 A.3d 1008, 1017 (Del. Ch. 2010) (internal quotations omitted).

equity interest in USARE, Plaintiffs do not point to a specific implied contractual obligation in the LLC Agreement that imposed this alleged duty on the Individual Defendants. Rather, Plaintiffs generally aver that because the LLC Agreement required the Individual Defendants to comply with the implied covenant, the Individual Defendants were therefore required to use their authority as managers of USARE to ensure Plaintiffs' desired conversion *under separate contracts*. Merely citing the provisions that require the Individual Defendants to comply with the implied covenant is insufficient to allege a specific implied obligation in the LLC Agreement itself.[124]

While Plaintiffs allege that, had they foreseen that the Individual Defendants would diminish their holdings upon converting Plaintiffs' equity from Morzev to USARE, Plaintiffs would have insisted upon language in the LLC Agreement to prevent such diminution,[125] such allegation does not overcome the fact that the LLC Agreement is completely silent as to what interests in USARE investors would receive if they converted their equity previously held in Morzev. The language of the LLC Agreement also does not indicate that all parties would have agreed to such an obligation had the parties negotiated the issue,[126] nor does the LLC Agreement,

---

[124] *See Cantor Fitzgerald, L.P.*, 1998 WL 842316, at *1 (explaining that a "plaintiff must advance provisions of the agreement . . . in order to allege sufficiently a specific implied contractual obligation").
[125] Pls.' AB 38–39.
[126] *See Cantor Fitzgerald, L.P.*, 1998 WL 842316, at *1.

even read as a whole, sufficiently speak to suggest that such an obligation was intended.[127]  Plaintiffs' assertion of a claim for breach of the implied covenant inhering in the LLC Agreement appears to me to be an attempt to use an "implied" duty in the LLC Agreement to vindicate what they agreed to, or wish they had agreed to, *i.e.*, exact percentages in USARE.  This Court, however, will not rewrite a contract simply because Plaintiffs wish they had gotten a better deal.[128]  And here, the contracts that would determine Plaintiffs' ownership in USARE are Plaintiffs' respective conversion agreements, *not* the LLC Agreement.  Therefore, Count VIII for breach of the implied covenant inhering in the LLC Agreement is dismissed.

### III. CONCLUSION

For the foregoing reasons, the Defendants' motions to dismiss are DENIED in part and GRANTED in part.  The parties should submit an appropriate form of order in accordance with this memorandum opinion.

---

[127] *See Lonergan*, 5 A.3d at 1017 (internal quotations omitted).
[128] *See Nemec*, 991 A.2d at 1125–26.